No. 25-01194

IN THE

# United States Court of Appeals for the First Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee*,

v.

RAIMUND GASTAUER,

*Relief Defendant-Appellant*,

ROGER KNOX; WINTERCAP S.A.; MICHAEL T. GASTAUER; WB21 US INC.; SILVERTON SA INC.; WB21 NA INC.; C CAPITAL CORP.; WINTERCAP SA INC.; B2 CAP INC.,

*Defendants*,

SIMONE GASTAUER FOEHR; B21 LTD.; SHAMAL INTERNATIONAL FZE; WB21 DMCC,

*Relief Defendants*.

On Appeal from the United States District Court
for the District of Massachusetts, No. 1:18-cv-12058 (Stearns, J.)

**OPENING BRIEF FOR APPELLANT RAIMUND GASTAUER**

JOHANNAH CASSEL-WALKER
HOGAN LOVELLS US LLP
4 Embarcadero Center
Suite 3500
San Francisco, CA 94111

JO-ANN TAMILA SAGAR
DANA A. RAPHAEL
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-6454
jo-ann.sagar@hoganlovells.com

*Counsel for Appellant Raimund Gastauer*

July 7, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iii

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ........................... 1

INTRODUCTION ................................................................................ 1

SUBJECT-MATTER JURISDICTION .................................................... 4

STATEMENT OF ISSUES .................................................................. 4

STATEMENT OF THE CASE ............................................................... 4

    A.    The SEC Pursues Securities Fraud Charges Against Third Parties But Does Not Accuse Gastauer Of Any Wrongdoing ......................... 4

    B.    The District Court Denies Gastauer's Repeated Objections To Personal Jurisdiction ................................................................. 6

    C.    This Court Reverses The District Court's Exercise Of Personal Jurisdiction Over Gastauer ....................................................... 9

    D.    Despite This Court's Decision, The District Court Found It Could Exercise Personal Jurisdiction Over Gastauer ......................... 11

    E.    Gastauer Withdraws From The American Proceedings When The District Court Overrides This Court's Decision ......................... 13

STANDARD OF REVIEW .................................................................. 15

SUMMARY OF ARGUMENT .............................................................. 16

ARGUMENT ................................................................................. 19

I.    THE DISTRICT COURT ERRED BY REFUSING TO DISMISS AND ORDERING JURISDICTIONAL DISCOVERY IN VIOLATION OF THE MANDATE RULE ................................................................. 20

i

**TABLE OF CONTENTS—Continued**

Page

II.   THE DISTRICT COURT ERRED BY REFUSING TO DISMISS AND ORDERING JURISDICTIONAL DISCOVERY WHEN THE COMPLAINT MADE NO COLORABLE CASE FOR PERSONAL JURISDICTION ..........................................................................29

   A.   A Foreign National's Receipt Of Funds Abroad Does Not Establish Personal Jurisdiction In The United States..........................29

   B.   The District Court Erred By Refusing To Dismiss And Approving A Fishing Expedition Under The Guise Of Jurisdictional Discovery ......................................................39

III.  THE DISTRICT COURT ABUSED ITS DISCRETION BY ORDERING JURISDICTIONAL DISCOVERY UNDER THE FEDERAL RULES AS A MATTER OF FIRST RESORT..........................44

   A.   Jurisdictional Discovery Cannot Proceed Against A Foreign Party Under The Federal Rules Without First Requiring Compliance With The Hague Evidence Convention ..........................45

   B.   Even If *Aérospatiale*'s Balancing Test Applied, The District Court's Application Of That Test Was An Abuse Of Discretion .......53

   C.   Declining To Apply The Hague Evidence Convention Prejudiced Gastauer ...............................................................................56

CONCLUSION ...........................................................................................57

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

ii

# TABLE OF AUTHORITIES

<u>Page</u>

C<span style="font-variant:small-caps">ASES</span>:

*Abbott v. Abbott*,
  560 U.S. 1 (2010)....................................................................................45

*Aldossari ex rel. Aldossari v. Ripp*,
  49 F.4th 236 (3d Cir. 2022) .................................................................31

*Am. Well Corp. v. Indegene Ltd.*,
  761 F. Supp. 3d 249 (D. Mass. 2024) ................................................41

*Anderson v. City of Bessemer City*,
  470 U.S. 564 (1985)..............................................................................55

*Ansah v. Regime PPE*,
  No. 2:21-cv-08829, 2022 WL 19827373 (C.D. Cal. Feb. 10, 2022)..................34

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
  480 U.S. 102 (1987)....................................................................35, 38, 42

*Badose v. Garland*,
  125 F.4th 1 (1st Cir. 2024)...................................................................25

*Beck v. Bronstein*,
  No. 1:23-cv-10416, 2023 WL 5833116 (D. Mass. Sept. 8, 2023) ....................41

*Benitez-Garcia v. Gonzalez-Vega*,
  468 F.3d 1 (1st Cir. 2006)....................................................................43

*Bradley v. Village of Univ. Park*,
  59 F.4th 887 (7th Cir. 2023) ...............................................24, 25, 26, 27

*Butler v. Sukhoi Co.*,
  579 F.3d 1307 (11th Cir. 2009) ..........................................................40

*Capen v. Campbell*,
  134 F.4th 660 (1st Cir. 2025)..............................................................35

# TABLE OF AUTHORITIES—Continued

Page

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th Cir. 2000) ...............................................................42

*Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.*,
    59 F. App'x 830 (7th Cir. 2003) ..........................................................27

*Copia Commc'ns, LLC v. AMResorts, L.P.*,
    812 F.3d 1 (1st Cir. 2016)....................................................................32

*Crabtree v. Aon Ins. Managers (Bermuda) Ltd.*,
    No. 23-1959, 2025 WL 943371 (4th Cir. Mar. 28, 2025) ...................33

*Doe I v. State of Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005)........................................................41

*Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*,
    746 F.2d 208 (3d Cir. 1984) ................................................................33

*Eagle Tech. v. Expander Americas, Inc.*,
    783 F.3d 1131 (8th Cir. 2015) .............................................................33

*E-Pass Techs., Inc. v. 3Com Corp.*,
    473 F.3d 1213 (Fed. Cir. 2007) ...........................................................26

*EEOC v. First Nat'l Bank of Jackson*,
    614 F.2d 1004 (5th Cir. 1980) .............................................................28

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010) ................................................................42

*Field v. Mans*,
    157 F.3d 35 (1st Cir. 1998)..................................................................24

*Fonseca v. Regan*,
    734 F.2d 944 (2d Cir. 1984) ................................................................28

*Fuld v. Palestine Liberation Org.*,
    No. 24-20 (U.S. June 20, 2025) ....................................................*passim*

## TABLE OF AUTHORITIES—Continued

Page

*Goldovsky v. Rauld*,
   No. 6:24-cv-00159, 2025 WL 942620 (W.D. Tex. Feb. 28, 2025),
   *report and recommendation adopted*, 2025 WL 939688 (W.D.
   Tex. Mar. 27, 2025) ................................................................................33

*Greater Newburyport Clamshell All. v. Pub. Serv. Co. of N.H.*,
   838 F.2d 13 (1st Cir. 1988).................................................16, 27, 28

*Grede v. FCStone, LLC*,
   867 F.3d 767 (7th Cir. 2017) .............................................................26

*Harris v. Lloyds TSB Bank, PLC*,
   281 F. App'x 489 (6th Cir. 2008) ......................................................33

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
   935 F.3d 211 (4th Cir. 2019) ........................................15, 27, 32, 39

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)...........................................................................30

*In re A.F. Moore & Assocs., Inc.*,
   974 F.3d 836 (7th Cir. 2020) .......................................................23, 24

*In re Auto. Refinishing Paint Antitrust Litig.*,
   358 F.3d 288 (3d Cir. 2004) ..............................................................52

*In re Pub. Offering PLE Antitrust Litig.*,
   427 F.3d 49 (1st Cir. 2005)...........................................................53, 54

*In re Sheehan*,
   48 F.4th 513 (7th Cir. 2022) ..............................................................31

*In re Subpoena to Witzel*,
   531 F.3d 113 (1st Cir. 2008)..............................................................28

*In re Vitamins Antitrust Litig.*,
   120 F. Supp. 2d 45 (D.D.C. 2000)................................................52, 53

## TABLE OF AUTHORITIES—Continued

Page

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)................................................................42, 43, 44

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998) ..............................................................42

*Jenco v. Martech Int'l, Inc.*,
   No. 86-4229, 1988 WL 54733 (E.D. La. May 19, 1988) ...................50

*Keane v. Expeditors Int'l of Wash., Inc.*,
   138 F.4th 613 (1st Cir. 2025)..............................................................27

*Knight v. Ford Motor Co.*,
   615 A.2d 297 (N.J. Super. Ct. 1992) ............................................50, 51

*Lawes v. CSA Architects & Eng'rs LLP*,
   963 F.3d 72 (1st Cir. 2020)..................................................................43

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
   22 F.4th 852 (9th Cir. 2022) ...............................................................41

*M & C Corp. v. Erwin Behr GmbH & Co., KG*,
   165 F.R.D. 65 (E.D. Mich. 1996) ........................................................55

*Maldonado-Cabrera v. Anglero-Alfaro*,
   26 F.4th 523 (1st Cir. 2022)................................................................28

*Medellín v. Texas*,
   552 U.S. 491 (2008)..............................................................................45

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ...............................................................33

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)........................................................................36, 37

*Motus, LLC v. CarData Consultants, Inc.*,
   23 F.4th 115 (1st Cir. 2022)...........................................................39, 40

## TABLE OF AUTHORITIES—Continued

Page

*Municipality of San Juan v. Rullan,*
    318 F.3d 26 (1st Cir. 2003)................................................................21

*Negrón-Torres v. Verizon Commc'ns, Inc.,*
    478 F.3d 19 (1st Cir. 2007)..........................................................31, 40

*Noonan v. Winston Co.,*
    135 F.3d 85 (1st Cir. 1998)................................................................38

*RJR Nabisco, Inc. v. European Cmty.,*
    579 U.S. 325 (2016)............................................................................36

*Saldana-Sanchez v. Lopez-Gerena,*
    256 F.3d 1 (1st Cir. 2001)..................................................................16

*SEC v. Gastauer,*
    93 F.4th 1 (1st Cir. 2024)...........................................................*passim*

*SEC v. Volkswagen Aktiengesellschaft,*
    No. 3:19-cv-01391, 2023 WL 1927244 (N.D. Cal. Feb. 10, 2023) ..................55

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist.
    of Iowa,*
    482 U.S. 522 (1987)..................................................................*passim*

*Stokes v. Stirling,*
    64 F.4th 131 (4th Cir. 2023) ......................................................24, 25

*Timothy Coffey Nursery Landscape Inc. v. Soave,*
    760 F. App'x 58 (2d Cir. 2019) ......................................................34

*United Fin. Mortg. Corp. v. Bayshores Funding Corp.,*
    245 F. Supp. 2d 884 (N.D. Ill. 2002)..............................................34

*United States v. Cheveres-Morales,*
    83 F.4th 34 (1st Cir. 2023)................................................................21

*United States v. Li,*
    206 F.3d 56 (1st Cir. 2000)..............................................................45

## TABLE OF AUTHORITIES—Continued

Page

*United States v. One 1987 BMW 325*,
  985 F.2d 655 (1st Cir. 1993)..............................................................16

*United States v. Reyes-Correa*,
  971 F.3d 6 (1st Cir. 2020)..................................................................25

*United States v. Rivera-Martinez*,
  931 F.2d 148 (1st Cir. 1991)..............................................................21

*United States v. Swiss Am. Bank, Ltd.*,
  274 F.3d 610 (1st Cir. 2001)..........................................................16, 27

*Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*,
  No. 5:23-cv-05721, 2025 WL 68136 (N.D. Cal. Jan. 10, 2025) ......................55

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
  646 F.3d 589 (8th Cir. 2011) ............................................................33

*Water Splash, Inc. v. Menon*,
  581 U.S. 271 (2017)..........................................................................45

*Work v. Bier*,
  106 F.R.D. 45 (D.D.C. 1985) ............................................................55

*Wyatt v. Kaplan*,
  686 F.2d 276 (5th Cir. 1982) ............................................................40

**STATUTES:**

15 U.S.C. § 77v...................................................................................4

15 U.S.C. § 77v(c) ............................................................................37

15 U.S.C. § 78u(d)(5).........................................................................36

15 U.S.C. § 78aa ................................................................................4

15 U.S.C. § 78aa(b).............................................................................37

28 U.S.C. § 1291.................................................................................4

## TABLE OF AUTHORITIES—Continued

Page

Hague Convention on the Taking of Evidence Abroad in Civil or
Commercial Matters, March 18, 1970, 23 U.S.T. 2555, *reprinted at* 28
U.S.C. § 1781 .................................................................................................*passim*

**OTHER AUTHORITIES:**

Gary B. Born, *The Hague Evidence Convention Revisited: Reflections
On Its Role In U.S. Civil Procedure*, Law & Contemp. Probs. 77
(1994) ................................................................................................46, 48, 49

Gary B. Born & Scott Hoing, *Comity and the Lower Courts: Post-
Aérospatiale Applications of the Hague Evidence Convention*, 24
Int'l Law. 393 (1990).............................................................................47

Hague Conference on Private International Law: Special Commission
Report on the Operation of the Hague Service Convention and the
Hague Evidence Convention (Apr. 1989), *reprinted at* 28 I.L.M.
1556 (1989).............................................................................................48

Rapport de la Commission spéciale (Report of the Special
Commission), *as reprinted in* 4 Conference de La Haye de droit
international prive: Actes et documents de la Onzième session
(1968) (1970 ed.), *available at* https://perma.cc/D7RA-92FF ...................46, 47

Restatement (Third) of Foreign Relations Law of the United States,
§ 442 (Reporters' Note 1) (1987) ......................................................50

Status Table: Convention of 18 March 1970 on the Taking of Evidence
Abroad in Civil or Commercial Matters (last updated 6-V-2025),
*available at* https://perma.cc/2ZXX-8TNT .......................................49

**REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

Relief Defendant-Appellant Raimund Gastauer respectfully requests oral argument in this appeal because the case involves important questions about personal jurisdiction and his constitutional due-process rights.

**INTRODUCTION**

Raimund Gastauer is a lifelong citizen and resident of Germany.  He is 80 years old, speaks limited English, and—as this Court found—"lacks any relevant contacts with the entire United States."  *SEC v. Gastauer*, 93 F.4th 1, 13 (1st Cir. 2024) (*Gastauer I*).  The SEC has nonetheless haled Gastauer into American courts and forced him to litigate under the threat of a multi-million-dollar judgment.  Making matters worse, the SEC does not accuse Gastauer of any wrongdoing.  It simply believes that Gastauer was an unwitting beneficiary of a third party's allegedly illegal conduct.

This Court already reversed the District Court's exercise of personal jurisdiction under these circumstances.  The SEC's "novel" theory that personal jurisdiction existed over Gastauer defied due process and could not be excused by the SEC's concerns over the difficulty of obtaining judgments against foreign litigants.  *Id.* at 10-11.  This difficulty, if it exists, "cannot overcome Gastauer's fundamental right to be subject only to lawful power."  *Id.* at 13 (citation and quotation marks omitted).

1

The District Court construed this Court's reversal as an invitation to order jurisdictional discovery.  When Gastauer resisted, the District Court sanctioned Gastauer and ultimately re-entered judgment against him.

Those proceedings were inconsistent with this Court's decision in *Gastauer I*; the District Court's errors warrant reversal and remand for dismissal.  For starters, the District Court erred by ordering jurisdictional discovery in violation of this Court's mandate.  This Court *reversed* the District Court's exercise of personal jurisdiction, concluding that "exercising in personam jurisdiction over Gastauer would not accord with the fair play and substantial justice due process demands." 93 F.4th at 13 (citations and quotation marks omitted).  On remand, the District Court held the exact opposite, concluding that the same complaint "made out a colorable case for personal jurisdiction."  Add.16.  That contravened the mandate rule and overlooked the SEC's appellate waiver of any alternative theory of jurisdiction.

Separately, the District Court erred by ordering jurisdictional discovery absent a colorable case for jurisdiction.  Courts cannot subject foreign litigants to unfettered jurisdictional inquiries.  The District Court did just that, authorizing discovery even though the SEC could not say what relevant information might be uncovered.

Although neither error requires a showing of prejudice, the prejudice is plain: Gastauer was subject to a discovery order that German law barred him from complying with, and he was severely penalized for his noncompliance.

Apart from these legal errors, the District Court abused its discretion by ordering discovery under the Federal Rules of Civil Procedure, not the Hague Evidence Convention, as a matter of first resort.[1]  The Hague Evidence Convention requires courts to first resort to certain agreed-upon procedures for conducting jurisdictional discovery abroad.  At the very least, the District Court was required to provide an evenhanded analysis, explaining why the treaty could not apply.  The District Court did neither.

Gastauer has been embroiled in American litigation for six years, even though this Court already found that exercising personal jurisdiction over Gastauer was inconsistent with due process.  He has been forced to retain U.S. counsel and has twice been sanctioned and subjected to multi-million-dollar judgments.  This is an affront to due process, this Court's prior ruling, and international comity.  The Court should reverse the District Court's exercise of personal jurisdiction and remand with instructions to dismiss Gastauer from the case.  At minimum, this Court should vacate the judgment and order that any jurisdictional discovery be served according to the Hague Evidence Convention.

---

[1] *See* Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, *reprinted at* 28 U.S.C. § 1781 ("Hague Evidence Convention").

## SUBJECT-MATTER JURISDICTION

The District Court entered final judgment against Gastauer on January 29, 2025.  Add.26-28.  Gastauer timely appealed on February 24, 2025.  JA311.

The District Court had subject-matter jurisdiction over the SEC's claims under 15 U.S.C. §§ 77v, 78aa.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.      Whether the District Court erred by refusing to dismiss Gastauer for lack of personal jurisdiction and instead ordering jurisdictional discovery when the mandate rule barred relitigation of this Court's holding that "exercising in personam jurisdiction over Gastauer would not accord with the fair play and substantial justice due process demands," 93 F.4th at 13 (citations and quotation marks omitted), and the complaint established no colorable basis for personal jurisdiction.

2.      Whether the District Court erred by ordering jurisdictional discovery under the Federal Rules as a matter of first resort, rather than using the Hague Evidence Convention.

## STATEMENT OF THE CASE

### A.      The SEC Pursues Securities Fraud Charges Against Third Parties But Does Not Accuse Gastauer Of Any Wrongdoing.

In 2018, the SEC filed a complaint in the District of Massachusetts alleging securities fraud by several business entities, Roger Knox, and Michael Gastauer.  JA50-93.  The SEC alleged that Knox operated a business called Wintercap SA to

4

fraudulently sell publicly-traded companies' stock. JA51. Wintercap allegedly provided a way for company insiders to "secretly dump" stock while making the sales "appear[] as ordinary sales by ordinary investors," evading registration and disclosure rules. *Id.* The SEC claimed that Michael participated in the scheme by creating companies that could "receive, and then further distribute, the proceeds of Wintercap SA's stock sales." JA53.

The SEC named Michael's 80-year-old father, Appellant Raimund Gastauer, as one of three "relief defendants." JA79-80. As a relief defendant, Raimund Gastauer "is not accused of any wrongdoing, and is part of a suit only as the holder of assets that must be recovered in order to afford complete relief." *Gastauer I*, 93 F.4th at 12 (citation and quotation marks omitted). According to the SEC, Michael caused two companies "to transfer approximately $3.3 million to [Michael]'s father, Raimund Gastauer, or accounts held for Raimund Gastauer's benefit," between December 2017 and February 2018. JA79. (Gastauer disputed those allegations, *see infra* p. 8.) The SEC offered "no allegation that Raimund Gastauer knew the money's illicit provenance when he received it." *Gastauer I*, 93 F.4th at 5.

The SEC emailed a copy of the summons and complaint—all in English—to an email address it believed belonged to Gastauer. JA49. Gastauer did not appear, and the clerk entered a default judgment against him. JA94.

5

Gastauer moved to set aside the default judgment two weeks later. JA95-101.

His grandson explained in an affidavit that "Raimund Gastauer is a lifelong resident

of Germany, speaks only limited English," and had never received notice of the

lawsuit. JA103. "His 70-year-old old wife . . . speaks no English, but sporadically

checked the email raimund@gastauer.com. Because she has no knowledge of what

the SEC is and doesn't speak English, she considered the emails served by the SEC

as spam and ignored or deleted them." *Id.*

The District Court set aside the default judgment. JA104.

## B.    The District Court Denies Gastauer's Repeated Objections To Personal Jurisdiction.

Gastauer entered a special appearance and moved to dismiss for lack of

personal jurisdiction. JA105-107. He argued that "the Court will never have the

personal jurisdiction required" because Gastauer "is a German national living in

Germany" who has "nothing to do with America—and nothing to do with the alleged

securities fraud scheme—[and] could not reasonably anticipate being haled into a

U.S. court." JA108, JA113. Gastauer attested (in German, translated to English)

that:

- he is a citizen of Germany, where he resides with his wife;

- he has never visited Massachusetts;

- over the course of his life, he has visited the United States approximately
  five times, each time as a tourist, with the last visit in January 2009;

6

- he has never conducted any business, earned any income, paid any taxes, or owned any real or personal property in the United States; and

- he does not have an agent, telephone number, offices, employees, post office box, deposit boxes, or bank accounts in the United States.

JA116-117.

The SEC opposed Gastauer's motion on two grounds. It argued first that the SEC did not need to establish "independent personal jurisdiction" over relief defendants like Gastauer on the theory that he was only a "nominal defendant"; instead, the agency thought it sufficed that the court had jurisdiction over Michael, the real party in interest. JA127-128. Second, the SEC argued that to the extent it had to show "personal jurisdiction over the Relief Defendants independently," the SEC had in fact plead personal jurisdiction through Gastauer's alleged "receipt and acceptance of substantial sums of money that are the proceeds of a United States fraud scheme," and by having an email address hosted by U.S. internet service providers. JA122, JA129-130 & n.2.

"The district court denied the motion in a docket order, citing two non-binding cases," neither of which mentioned personal jurisdiction, "without further explanation." *Gastauer I*, 93 F.4th at 5; *see* Add.1. Gastauer subsequently answered the complaint, again asserting that the District Court lacked personal jurisdiction over him. *Gastauer I*, 93 F.4th at 5; *see* JA159.

The SEC ultimately sought summary judgment against Gastauer, arguing that he received a total of $3.3 million in fraudulent proceeds from three wire transfers. JA197.  Gastauer disputed those allegations and contended he was not a proper relief defendant, arguing that the SEC did not show that the first wire transfer of $500,000 was the product of fraud, and that he had never possessed the remaining $2.8 million from two other wire transfers, which had been sent to a company in which Gastauer no longer had any interest.  JA197-199.  The District Court granted partial summary judgment to the SEC, concluding that the SEC established that $500,000 of the disputed funds were the proceeds of fraud, but that the SEC had failed to demonstrate that Gastauer "ever possessed" the remaining funds or controlled any entity that possessed those funds.  JA200-201.  The court allowed the SEC to take additional discovery regarding those funds.  JA202-203.

When the SEC noticed a deposition under the Federal Rules of Civil Procedure, JA206-207, "Gastauer indicated that he did not intend to sit for it."  93 F.4th at 5; *see* JA208-213.  Gastauer maintained that the District Court lacked personal jurisdiction over him and that he was concerned that submitting to a deposition would jeopardize his ability to object to enforcement of any United States judgment in Germany.  JA208-213, JA227-232.  Gastauer also argued that his deposition could be compelled only if he was "properly served under the Hague

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters."  JA213.

The SEC moved for sanctions, JA204-205, which the District Court granted by entering judgment against Gastauer, Add.2-4, Add.9-10.  The court also clarified its grounds for exercising personal jurisdiction, stating that personal jurisdiction over principal defendants could be "imputed to a relief defendant."  Add.6.  The court found Gastauer liable for disgorgement of the amount of the three wire transfers, plus interest—nearly $4 million.  JA215-217.

### C.    This Court Reverses The District Court's Exercise Of Personal Jurisdiction Over Gastauer.

On appeal, Gastauer asserted that "the district court should have dismissed the case for lack of personal jurisdiction" because Gastauer has "no ties to the United States" and was "accused of no wrongdoing."  *Gastauer I*, Appellant Br. 1-2, 17, 23.  That "renders any United States court's exercise of personal jurisdiction over him a violation of due process."  *Gastauer I*, 93 F.4th at 9.

The SEC responded that Gastauer forfeited his jurisdictional challenge and that the District Court properly imputed its jurisdiction over Michael to Gastauer.  *Id.*  The SEC made "no claim that Gastauer has any actual contacts with the United States" and did not contest *any* of the facts underlying Gastauer's jurisdictional challenge.  *Id.*

This Court reversed "[t]he district court's exercise of personal jurisdiction over" Gastauer, finding that Gastauer's jurisdictional challenge was both preserved and meritorious. *Id.* at 6-8, 13. For starters, the SEC's "imputed contacts" theory defied due process; there was "no persuasive precedent directly stating that a court need not have personal jurisdiction over a relief defendant to hold him liable for monetary disgorgement." *Id.* at 10-12.

Moreover, the SEC did not claim that it could otherwise establish personal jurisdiction over Gastauer. *Id.* at 9 & n.4. This Court accordingly found that Gastauer is "a foreign resident who lacks any relevant contacts with the entire United States"—he is "a German citizen who resides in Germany," "has never been to Massachusetts," and "has had no contact with the United States since before 2009, when he last visited as a tourist." *Id.* at 4, 13. Moreover, "the SEC has not accused Gastauer of any legal wrongdoing," and the "extent of his alleged participation" is "as an after-the-fact recipient of funds that were previously obtained fraudulently"; "[t]he SEC does not even claim that he knew that the money he was receiving was the fruit of illegal activity." *Id.* at 10-13.

The District Court thus erred by exercising jurisdiction over Gastauer based "solely on its finding that Gastauer had received $3.3 million from his son, Michael" and by ordering "Gastauer personally . . . to pay just over $3.3 million, plus prejudgment interest." *Id.* at 5. Because Gastauer's "only involvement in the case

10

is his receipt of a unilateral transfer of money from a third party," "[h]aling him into court on the basis of that involvement alone would accomplish exactly what due process prohibits." *Id.* at 12. This Court further concluded that "[c]onsiderations of international rapport" "reinforce[d] [its] determination that exercising in personam jurisdiction over Gastauer would not accord with the fair play and substantial justice due process demands." *Id.* at 13 (citations and quotation marks omitted).

This Court thus reversed "[t]he district court's exercise of personal jurisdiction over" Gastauer and "remanded to the district court for further proceedings consistent with this opinion." *Id.*

### D.     Despite This Court's Decision, The District Court Found It Could Exercise Personal Jurisdiction Over Gastauer.

On remand, the District Court sua sponte "requested supplemental briefing to assess whether the court could nonetheless exercise personal jurisdiction over Gastauer." Add.13; *see* Add.12. The District Court said nothing of this Court's holding that "exercising in personam jurisdiction over Gastauer would not accord with the fair play and substantial justice due process demands." 93 F.4th at 13 (citations and quotation marks omitted).

Following the District Court's lead, the SEC argued that personal jurisdiction existed over Gastauer because of his "involvement in facilitating [the] three wire transfers," meaning (apparently) that Gastauer "must have provided the name and account number of his personal bank account in Germany." JA237-238. The SEC

11

acknowledged that it "does not have evidence" of any "regularity and consistency" in Gastauer's "financial transactions in the United States, or bank accounts in the United States." JA236. But the SEC urged the District Court to either exercise personal jurisdiction or authorize jurisdictional discovery. JA237-242.

The District Court concluded that the SEC failed to establish personal jurisdiction. Add.13-14. "The SEC does not allege that Gastauer engaged in any wrongdoing or knew that Michael's conduct was unlawful," and the SEC's speculation that Gastauer had provided Michael his name and account information to facilitate the wire transfers was "more conclusory than factual," particularly given that Gastauer "had previously wired Michael funds . . . unrelated to the SEC's present claims." Add.13 (citation omitted). The SEC had thus "fall[en] short of supporting [its] claim of personal jurisdiction over Gastauer." *Id.*

The District Court nonetheless permitted jurisdictional discovery on "Gastauer's involvement in financial transactions in the United States," concluding that the SEC had made "out a colorable case for jurisdiction." Add.13-14. In addition to allowing interrogatories and document requests, the court allowed the SEC to depose Gastauer. *Id.* The District Court also ruled that the SEC could rely on the Federal Rules of Civil Procedure, rather than the Hague Evidence Convention, in seeking discovery. *Id.* The court opined that the case was "five-and-a-half years old, and yet it remains stalled on 'the crucial threshold issue of jurisdiction,'" and

"[u]se of the Hague procedures—which would require the court to issue a letter request for assistance to a German court—introduces unknown variables that will no doubt extend the timeline further than necessary." *Id.* (citation omitted).

### E. Gastauer Withdraws From The American Proceedings When The District Court Overrides This Court's Decision.

Having received an order from this Court reversing the District Court's exercise of jurisdiction, Gastauer began to withdraw from the American proceedings. He fired his U.S. counsel, *see* JA293-295, did not respond to the SEC's supplemental briefing, and explained through German counsel that he could not respond to the SEC's discovery requests unless served in compliance with the Hague Evidence Convention. *See* JA279-283.

As his German counsel explained, Gastauer could not comply with the discovery requests, which requested information about foreign transactions with U.S. entities, "without at the same time violating German law," particularly as to data-privacy protections. JA284-287. Moreover, "the German government has officially declared that the Hague Evidence Convention is the exclusive means of evidence-taking in German territory." JA286. Compliance with the convention was needed to ensure that "the designated German Central Authority has given its permission" for the foreign discovery request and that the request was either "written in German or accompanied by a translation into German." *Id.* Otherwise, Gastauer would have been forced "to participate in an online deposition by the SEC in a

foreign language to be used in a foreign court without his German legal counsel."
*Id.*

The SEC nonetheless requested sanctions, JA256-267, and the District Court ordered Gastauer to personally appear via Zoom at a 9 p.m. German-time hearing. *See* JA29 (ECF No. 323), JA299.  Gastauer did not attend.  At the hearing, the SEC said it would ask for the default judgment to be reimposed so the SEC could attempt to "domesticate that in a German court" and "attempt to get resources from [Gastauer] in Germany."  JA316.  The District Court inquired whether domesticating the judgment would require the SEC "to use the Hague Convention"; the SEC's counsel was unsure.  *Id.*  The court advised that some countries have "forbidden" U.S. officials to "attempt[] to carry out . . . legal measures without [the country's] authorities approving them in advance."  JA317.  The District Court also advised that the SEC should seek "a money judgment to have any chance at all in a European court"; the District Court said it would "wait for [the SEC] to take the next step" in seeking it.  JA319.  As for the SEC's sanctions motion, the court said it would take "a few hours to think about it."  JA318.

Less than hour later, the District Court granted the SEC's sanctions motion. Add.16.  The court did not address Gastauer's objections based on the Hague Evidence Convention.  Nor did the court consider that Gastauer was effectively proceeding pro se given that Gastauer had "terminated his U.S. counsel."  *Id.*

Instead, it sanctioned Gastauer under Rule 37(b) "by establishing as admitted facts that would support the exercise of personal jurisdiction over him." *Id.*; *see* Add.18-25. The court stated without elaboration that "the SEC has made out a colorable case for personal jurisdiction." Add.16. The court did not address its prior ruling that the SEC's complaint "falls short of supporting the SEC's claim of personal jurisdiction over Gastauer." Add.13. Nor did it say anything about this Court's ruling that "exercising in personam jurisdiction over Gastauer would not accord with the fair play and substantial justice due process demands." 93 F.4th at 13 (citations and quotation marks omitted).

The SEC moved to re-enter the default judgment against Gastauer, which the District Court granted. JA301-302; Add.18-25. The court also recalculated interest, resulting in an almost $4.7 million judgment. Add.26-28. Gastauer appealed.

## STANDARD OF REVIEW

An order compelling discovery has "the same effect as a denial of a motion to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2)," *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019), and this Court "review[s] de novo a district court's exercise of personal jurisdiction over a party to the litigation," *Gastauer I*, 93 F.4th at 8.

This Court ordinarily reviews discovery sanctions for abuse of discretion, *Companion Health Servs., Inc. v. Kurtz*, 675 F.3d 75, 83 (1st Cir. 2012); it "will not

rubber stamp sanction decisions entered in the district court," *United States v. One 1987 BMW 325*, 985 F.2d 655, 657-658 (1st Cir. 1993). The validity of a discovery sanction under Rule 37 "depends on the correctness of the underlying discovery order." *Greater Newburyport Clamshell All. v. Pub. Serv. Co. of N.H.*, 838 F.2d 13, 17 (1st Cir. 1988). A plaintiff's entitlement to even "a modicum of jurisdictional discovery" is "not absolute." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625-626 (1st Cir. 2001) (citations omitted). The plaintiff must first "make[] out a colorable case for the existence of *in personam* jurisdiction," which includes "the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." *Id.* (citations omitted). When a discovery order "rests on an incorrect legal standard or a misapplication of the law to the relevant facts," the order "may not be upheld." *Saldana-Sanchez v. Lopez-Gerena*, 256 F.3d 1, 8 (1st Cir. 2001) (collecting cases).

## SUMMARY OF ARGUMENT

I.     The District Court erred by refusing to dismiss the SEC's claims against Gastauer and instead ordering jurisdictional discovery in violation of the mandate rule. This Court previously reviewed the SEC's complaint and held that "exercising in personam jurisdiction over Gastauer would not accord with the fair play and substantial justice due process demands." 93 F.4th at 13 (citations and quotation marks omitted). "[D]ue process prohibits" haling Gastauer into an American court

16

on the basis of "his receipt of a unilateral transfer of money from a third party." *Id*. at 12.

The mandate rule barred the District Court from issuing a ruling that conflicted with *Gastauer I*. Yet the District Court concluded that the same complaint that this Court condemned actually "makes out a colorable case for [personal] jurisdiction." Add.13. That conclusion irreconcilably conflicts with this Court's mandate, and cannot be excused by an alternative theory of personal jurisdiction that the SEC waived in *Gastauer I*. This Court should again reverse the District Court's exercise of personal jurisdiction and remand for dismissal.

II.     The District Court also erred in authorizing jurisdictional discovery absent a colorable personal-jurisdiction theory.

A.     The District Court found a colorable basis for personal jurisdiction based on Gastauer's alleged receipt of funds from his son. That contradicted this Court's holding and authorized a jurisdictional fishing expedition when dismissal was the proper course. The SEC cannot escape that result by claiming that Gastauer "facilitated" the transfers. There is no material difference between the "receipt of a unilateral transfer of money from a third party" and "facilitating" that receipt. *See Gastauer I*, 93 F.4th at 12. The SEC's "facilitation" allegations were entirely conclusory. And even if Gastauer had "facilitated" the wire transfers, that would not establish personal jurisdiction here.

17

This Supreme Court's recent decision in *Fuld v. Palestine Liberation Organization*, No. 24-20 (U.S. June 20, 2025), does not change that conclusion. The Fifth Amendment requires courts to assess "the reasonableness of the assertion of jurisdiction." Slip op. 20 (citation omitted). Exercising jurisdiction over a foreign relief defendant, not accused of wrongdoing, who lacks any connection to the United States is neither reasonable nor authorized by statute.

B.     Without any colorable basis to exercise personal jurisdiction, the District Court committed legal error by ordering jurisdictional discovery. Even if the District Court had some discretion on this issue (it did not), the court abused that discretion by allowing unbridled discovery into Gastauer's alleged U.S. contacts. Due process and international comity both condemn greenlighting expansive discovery over foreign nationals. The District Court further erred in granting jurisdictional discovery without accounting for these concerns.

III.     The District Court also abused its discretion by ordering jurisdictional discovery under the Federal Rules of Civil Procedure, rather than the Hague Evidence Convention—a multi-nation agreement governing how to obtain evidence from a party in another country.

A.     The Hague Evidence Convention applies as a matter of first resort when circumventing the convention would undermine "mutual judicial co-operation in civil or commercial matters." Conducting jurisdictional discovery against a foreign

18

litigant by first resorting to domestic law substantially undermines the Hague Evidence Convention, violating the treaty.

B.    Even if the Hague Evidence Convention's application depends on a balancing test, the District Court abused its discretion in discarding it and ignoring the factors the Supreme Court has deemed relevant to any comity analysis. The District Court also committed several errors of judgment, including by deeming Germany to lack any interest in having discovery proceed under the Hague Evidence Convention, and by summarily concluding that the Hague Evidence Convention would unacceptably delay the proceedings.

C.    Declining to apply the Hague Evidence Convention prejudiced Gastauer, forcing him to choose between violating the District Court's meritless discovery order or violating his home country's laws.

## ARGUMENT

The District Court purported to exercise personal jurisdiction over Gastauer based on the SEC's allegations that Gastauer received "$3.3 million from his son, Michael, who had obtained the money by committing securities fraud in the United States." *Gastauer I*, 93 F.4th at 5. This Court reversed, holding that "due process prohibits" exercising personal jurisdiction in that context. *Id.* at 11-12. On remand, the SEC declined to file an amended complaint asserting any other basis for personal

jurisdiction.  That left the District Court with one option: dismiss Gastauer from the case.

The District Court refused to do so and instead ordered jurisdictional discovery.  That was error.  This Court should reverse, hold that the District Court lacks personal jurisdiction over Gastauer, and remand with instructions to dismiss Gastauer from the case.  At minimum, this Court should order that any jurisdictional discovery be served according to the Hague Evidence Convention.

## I.     THE DISTRICT COURT ERRED BY REFUSING TO DISMISS AND ORDERING JURISDICTIONAL DISCOVERY IN VIOLATION OF THE MANDATE RULE.

Gastauer is an elderly German citizen "who lacks any relevant contacts with the entire United States."  *Gastauer I*, 93 F.4th at 4, 13.  The SEC joined Gastauer to this lawsuit as a nominal "relief defendant"; "the SEC has not accused Gastauer of any legal wrongdoing."  *Id*. at 12-13.  And over six years of litigation, the only jurisdictional allegations the SEC could muster against Gastauer were that he is "an after-the-fact recipient of funds that were previously obtained fraudulently" by his son.  *Id.* at 10-11.  This Court already held that "due process prohibits" haling Gastauer into court on this basis.  *Id.* at 12.  On remand, the District Court should have dismissed Gastauer from the case.  The District Court's order compelling jurisdictional discovery therefore violated the mandate rule.

1.  The mandate rule requires district courts to adhere to the disposition of issues resolved in an earlier appeal.  *Municipality of San Juan v. Rullan*, 318 F.3d 26, 29 (1st Cir. 2003).  An appellate court's decision "establishes the law of the case and it *must* be followed by the trial court on remand."  *United States v. Rivera-Martinez*, 931 F.2d 148, 150 (1st Cir. 1991) (citation omitted).  This rule "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case."  *United States v. Cheveres-Morales*, 83 F.4th 34, 40 (1st Cir. 2023) (citation omitted).

*Gastauer I* reversed the District Court's "assertion of personal jurisdiction" over Gastauer based on the SEC's complaint.  93 F.4th at 8 n.3.  "The extent" of the SEC's allegations were that Gastauer had received funds "that were previously obtained fraudulently."  *Id.* at 10-11.  The SEC offered "no allegation that Raimund Gastauer knew the money's illicit provenance when he received it."  *Id.* at 5.  "Nor had the SEC alleged that he played any role in his son's fraudulent dealings."  *Id.* Indeed, "the SEC has not accused Gastauer of *any* legal wrongdoing."  *Id.* at 13 (emphasis added).  The District Court "nevertheless entered a judgment against Gastauer personally, ordering him to pay just over $3.3 million, plus prejudgment interest," and the District Court purported to "justify the exercise of jurisdiction over Gastauer" based "solely on its finding that Gastauer had received that $3.3 million

21

from his son, Michael, who had obtained the money by committing securities fraud in the United States." *Id.* at 5.

This Court reversed, holding that "exercising in personam jurisdiction over Gastauer would not accord with the fair play and substantial justice due process demands." *Id.* at 13 (citations and quotation marks omitted). The Court rejected the SEC's "novel position" that the District Court could "impute" to Gastauer the contacts of his son. *Id.* at 9-10. Gastauer's "only involvement in the case is his receipt of a unilateral transfer of money from a third party," and "[h]aling him into court on the basis of that involvement alone would accomplish exactly what due process prohibits." *Id.* at 12. Holding otherwise, the Court reasoned, would be "[a]n uninhibited approach to personal jurisdiction" and would "pose risks to international comity." *Id.* at 13 (citation and quotation marks omitted). This Court directed that the "district court's exercise of personal jurisdiction over [Gastauer] is accordingly reversed and the case is remanded to the district court for further proceedings consistent with this opinion." *Id.*

This Court's remand "for further proceedings consistent with [its] opinion" left the District Court with one path: dismissing Gastauer from the case, as it should have done when he moved to dismiss more than six years ago. The SEC could have tried to avoid that result by requesting leave to file an amended complaint, if it believed there was some valid basis for personal jurisdiction. The agency declined

22

to do so, instead choosing to proceed on the same complaint previously addressed by this Court and arguing—contrary to this Court's ruling—that the SEC had adequately alleged personal jurisdiction because Gastauer "received over $3.3 million" in three wire transfers from companies allegedly controlled by his son, Michael. JA240.

Faced with the SEC's decision to double-down on a theory of personal jurisdiction that this Court held "due process prohibits," *Gastauer I*, 93 F.4th at 12, the District Court had no choice but to dismiss Gastauer from the case. Yet the District Court concluded the same complaint "makes out a colorable case for [personal] jurisdiction." Add.13. That irreconcilably conflicts with this Court's mandate, which "reversed" the "district court's exercise of personal jurisdiction" because "exercising in personam jurisdiction over Gastauer would not accord with the fair play and substantial justice due process demands." *Gastauer I*, 93 F.4th at 13 (citations and quotation marks omitted). When "due process prohibits" exercising personal jurisdiction over Gastauer "as an after-the-fact recipient" of wire transfers, *see id.* at 5, 10-12, the SEC cannot "make[ ] out a colorable case for jurisdiction" based on allegations that Gastauer was the recipient of those same exact wire transfers, Add.13. The District Court's decision was therefore "only a step removed from [the] court declaring that it was right all along and entering the judgment just reversed—the most obvious violation of the mandate rule." *In re A.F.*

23

*Moore & Assocs., Inc.*, 974 F.3d 836, 841 (7th Cir. 2020) (per curiam) (collecting cases).

2.  The District Court's violation of the mandate rule was exacerbated by the SEC's appellate waiver of any alternative theory of personal jurisdiction.  *See Bradley v. Village of Univ. Park*, 59 F.4th 887, 895 (7th Cir. 2023) (noting that doctrines of the law of the case and waiver "often overlap").  In his first appeal, Gastauer presented extensive argument that "the district court lacked personal jurisdiction over" him because he has "no ties to the United States" and was "accused of no wrongdoing," and that the District Court accordingly "should have dismissed the case for lack of personal jurisdiction."  *Gastauer I*, Appellant Br. 1-2, 17, 23. The SEC did not contest any of those facts or arguments.  Instead, the SEC argued only its "imputed contacts" theory of jurisdiction.  *Gastauer I*, 93 F.4th at 9 n.4.  The SEC thus abandoned any argument that it had adequately alleged personal jurisdiction over Gastauer in his own right.  *Id.*

"[A] party's failure to raise or discuss an issue in its appellate brief is to be deemed an abandonment of that issue" and will not be considered.  *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023) (citations, quotation marks, and brackets omitted). Although waiver "is not precisely symmetrical for appellees and appellants," an appellee waives arguments "by failing to respond to an appellant's arguments at all." *Bradley*, 59 F.4th at 897; *see also Field v. Mans*, 157 F.3d 35, 41 (1st Cir. 1998)

(explaining that "in some situations" an appellee must "preserve an alternate theory" by "rais[ing] the point in its appellate briefs"); *Badose v. Garland*, 125 F.4th 1, 7 (1st Cir. 2024) (holding the government waived legal challenges and factual claims by "inexplicably ignoring an appellant's arguments in its response brief and outright failing to join in the adversarial process") (citation, quotation marks, and brackets omitted); *United States v. Reyes-Correa*, 971 F.3d 6, 16 (1st Cir. 2020) ("The appellee waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellant.") (citation, quotation marks, and brackets omitted). "Enforcing waiver and forfeiture rules against appellees reflects the principle that [courts] apply these rules on a consistent basis so that they provide a substantial measure of fairness and certainty to the litigants who appear before [the court]." *Stokes*, 64 F.4th at 137 (citation, quotation marks, and brackets omitted); *see Badose*, 125 F.4th at 7.

Here, the SEC deliberately "bypassed" Gastauer's argument that he lacked any relationship with the United States. *See Bradley*, 59 F.4th at 901-902. It was therefore undisputed on appeal that Gastauer is a "foreign resident who lacks any relevant contacts with the entire United States," who "is himself not liable for any wrongdoing," and whose "only involvement in the case is his receipt of a unilateral transfer of money from a third party." *Gastauer I*, 93 F.4th at 12-13. That waiver "shape[d] the law of the case." *Bradley*, 59 F.4th at 896. Indeed, this Court rejected

the SEC's imputed-contacts theory precisely because it would allow Gastauer to be haled into court based on the receipt of those funds "alone," and thus "would accomplish exactly what due process prohibits." *Gastauer I*, 93 F.4th at 12.

Footnote 4 of *Gastauer I* confirms this Court's reliance on the SEC's waiver. There, this Court noted that it considered only the SEC's imputed-contacts theory of jurisdiction because "the SEC has limited its argument on appeal" to that issue. 93 F.4th at 9 n.4. That was not a permission slip for the SEC to reverse course and relitigate personal jurisdiction on remand. Otherwise, this Court would have *vacated* the District Court's order finding jurisdiction, in lieu of *reversing* it. *See E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1218 (Fed. Cir. 2007) ("By vacating, we signaled that . . . a proper claim construction might support a judgment (summary or otherwise) in favor of either party . . . ."); *In re Richardson*, 793 F.2d 37, 40-41 (1st Cir. 1986) (per curiam) (concluding that "the proper disposition is to reverse," "[r]ather than vacate the order and remand for further proceedings (e.g., for the taking of testimony)").

Simply put, the SEC's waiver was central to *Gastauer I* and helped define the scope of the Court's mandate—and thus, "the scope of any remand." *Bradley*, 59 F.4th at 896. The SEC was not free on remand to raise arguments that were "flatly incompatible with [the] prior mandate." *Grede v. FCStone, LLC*, 867 F.3d 767, 775 (7th Cir. 2017).

3. With no basis to exercise personal jurisdiction that this Court or the SEC's waiver had not already foreclosed, the District Court was obligated to dismiss Gastauer from the case. *Cf. Bradley*, 59 F.4th at 893 (appellee's waiver meant that appellant was "entitled to judgment" on remand). This Court should review the District Court's failure to do so de novo. *See Hawkins*, 935 F.3d at 226-227 (treating district court's order granting discovery as a failure to dismiss and reviewing the personal jurisdiction question de novo); *cf. Gastauer I*, 93 F.4th at 8 & n.3 (reviewing district court's "assertion of personal jurisdiction" de novo); *Keane v. Expeditors Int'l of Wash., Inc.*, 138 F.4th 613, 617 (1st Cir. 2025) (whether complaint stated *prima facie* case for personal jurisdiction is reviewed de novo).

To the extent the Court instead reviews the District Court's orders for abuse of discretion, reversal and dismissal of Gastauer from the case is nevertheless required. A discovery sanction's validity "depends on the correctness of the underlying discovery order," *Greater Newburyport*, 838 F.2d at 17, and discovery orders must be reversed when they are "plainly wrong" and resulted in "substantial prejudice," *Swiss Am. Bank*, 274 F.3d at 626 (citation omitted); *see Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.*, 59 F. App'x 830, 843 (7th Cir. 2003) (reversing discovery sanction because it "was premised in large part on the district court's earlier and erroneous discovery orders"). And here, the District Court's violation of the mandate rule means its order granting discovery was plainly wrong. *See*

*Maldonado-Cabrera v. Anglero-Alfaro*, 26 F.4th 523, 526 (1st Cir. 2022) ("a material error of law is perforce an abuse of discretion"); *In re Subpoena to Witzel*, 531 F.3d 113, 117 (1st Cir. 2008) ("A decision may be plainly wrong if it is based on an incorrect legal standard or a misapplication of the law.").

When a defendant is sanctioned for disobeying an unlawful discovery order, this Court does not require a showing of prejudice. *See Greater Newburyport*, 838 F.2d at 17 (considering only "the correctness of the underlying discovery order"); *accord Fonseca v. Regan*, 734 F.2d 944, 948 (2d Cir. 1984) ("where the information sought is not properly discoverable, it is axiomatic that a district court should not impose a Rule 37 sanction for a party's failure to comply with an order to reveal such information"); *EEOC v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1007 (5th Cir. 1980) (same). This makes sense. The substantial prejudice caused by an unlawful sanction is plain. But even if some showing of prejudice were required, that prejudice exists here. Had the District Court adhered to this Court's mandate, it would have dismissed this case for lack of jurisdiction. The court instead authorized jurisdictional discovery in violation of the mandate, on terms that violate German law, *see* JA285-286, and severely penalized Gastauer for failing to comply, Add.16. That penalty is the sole basis for the District Court's finding of personal jurisdiction and the almost $4.7 million default judgment that followed. *Id.*; *see* Add.26-28. Reversal and remand for dismissal is warranted.

## II.    THE DISTRICT COURT ERRED BY REFUSING TO DISMISS AND ORDERING JURISDICTIONAL DISCOVERY WHEN THE COMPLAINT MADE NO COLORABLE CASE FOR PERSONAL JURISDICTION.

### A.    A Foreign National's Receipt Of Funds Abroad Does Not Establish Personal Jurisdiction In The United States.

1.   Under the Fifth Amendment's Due Process Clause, a court "must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." *Gastauer I*, 93 F.4th at 13 (citation omitted).  At minimum, the plaintiff "must show" that maintaining the suit in the United States is "reasonable" and "does not offend traditional notions of fair play and substantial justice." *Id.* at 8, 12 (citations and quotation marks omitted).

The SEC's allegations flunked that standard.  Indeed, this Court already held that "exercising in personam jurisdiction over Gastauer would *not* accord with the fair play and substantial justice due process demands." *Id.* at 13 (emphasis added, citations and quotation marks omitted).  That is because the SEC alleged only that Gastauer was the recipient of $3.3 million through three wire transfers from U.S. companies controlled by his son Michael; it did "not allege that Gastauer engaged in any wrongdoing or knew that Michael's conduct was unlawful," Add.13; *see Gastauer I*, 93 F.4th at 13.  Those allegations failed as a matter of law: "due process prohibits" exercising personal jurisdiction over a foreign national "whose only involvement in the case is his receipt of a unilateral transfer of money from a third

party." *Gastauer I*, 93 F.4th at 12. That the SEC went to such great lengths to attempt to "impute" personal jurisdiction to Gastauer reflects the SEC's understanding that it could not establish personal jurisdiction over Gastauer directly.

2. The SEC tried to escape this Court's holding in *Gastauer I* by arguing on remand that Gastauer "facilitated" the three wire transfers because he "must have provided the name and account number of his personal bank account in Germany." JA237-238, JA240. That argument is fatally flawed three times over.

*First*, there is no material difference between the "receipt of a unilateral transfer of money from a third party," *Gastauer I*, 93 F.4th at 12, and "facilitating" that receipt by providing bank account information, JA237. Absent a situation of mistaken identity, the recipient of transferred funds must ordinarily do *something* at some point to share his account information; as the SEC noted, there would otherwise be "no way that [the sender] would have had [the recipient's] personal bank account number." JA238. The foreign defendant in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411, 416 (1984), presumably shared its bank account information before it "received into its [U.S.] bank accounts over $5 million in payments," yet the Supreme Court had no trouble concluding that the "acceptance . . . of checks" into those accounts was "of negligible significance" in determining personal jurisdiction. Just so here: "facilitation" or no, Gastauer is still just "an after-the-fact recipient of funds that were previously obtained fraudulently,"

for which "due process prohibits" haling him into court.  *Gastauer I*, 93 F.4th at 10-12.

 *Second*, as the District Court pointed out, the SEC's guesswork that Gastauer "must have acted affirmatively" to provide bank account information for the three wire transfers, JA238, was "conclusory," Add.13 (citation omitted)—*at best*.  The SEC acknowledged that Gastauer "had previously wired Michael funds in January of 2016" in a transaction "unrelated to the SEC's present claims against Gastauer," Add.13; *see* JA244, JA247—so Michael likely *already had* Gastauer's account information.  The SEC "cannot show up in court with bare allegations and force [Gastauer] to start handing over evidence."  *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022) (citation and quotation marks omitted); *see Negrón-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 25, 27 (1st Cir. 2007) ("conclusory allegations" cannot establish personal jurisdiction); *In re Sheehan*, 48 F.4th 513, 527 (7th Cir. 2022) (similar).

 Moreover, the SEC's allegation that Gastauer provided his bank account information pertained only to the first wire transfer.  JA238.  The SEC offered *no explanation* of how Gastauer "facilitated" the latter two wire transfers, which the SEC said were sent to a foreign company's bank account and subsequently used to

purchase a property overseas. JA239.[2] As the District Court noted, "Gastauer's connection to the[se] other two transfers is even more tenuous, as the court previously found that the SEC has not shown that Gastauer controlled" the foreign company at the time of the transfers. Add.13; *see* JA200-201; JA171-172. But even setting that aside, the after-the-fact use of funds abroad cannot establish personal jurisdiction in the United States: If "due process prohibits" exercising personal jurisdiction over a foreign "after-the-fact recipient of funds that were previously obtained fraudulently," *Gastauer I*, 93 F.4th at 10-12, due process necessarily prohibits exercising personal jurisdiction based on how those funds are allegedly disposed of overseas. *See Hawkins*, 935 F.3d at 231 (discussing the "serious comity concerns that would arise if [courts] permitted the exercise of personal jurisdiction over foreign nonparties based on purely foreign conduct").

*Third*, even if Gastauer had "facilitated" the wire transfers, that would not establish personal jurisdiction. "[W]ire-transfers to and from a forum" do not establish that "a foreign [party] could 'reasonably anticipate being haled into court

---

[2] The SEC also claimed that Gastauer once received in Germany a FedEx package sent by a *different* company (WB21 NA Inc.)—not any of the entities allegedly involved in the wire transfers. JA239. Of course, receiving a package mailed from the United States cannot establish personal jurisdiction. *See, e.g.*, *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 5 (1st Cir. 2016) (foreign company's "receipt of" packages shipped from forum could not establish personal jurisdiction). Even the District Court rejected the SEC's argument, omitting the alleged package-sending company from the scope of its discovery order. *See* Add.13-14.

there.'" *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) (citation omitted). Indeed, numerous courts have held that *initiating* a wire transfer—which the SEC does not even accuse Gastauer of doing—is not enough to establish personal jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (German corporation's "wire-transfer of money" insufficient to establish that it "could 'reasonably anticipate being haled into court'") (citations omitted); *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 209 (3d Cir. 1984) (rejecting personal jurisdiction when non-resident party "does no more than borrow from and repay a loan to the forum . . . by wire transfer"); *Crabtree v. Aon Ins. Managers (Bermuda) Ltd.*, No. 23-1959, 2025 WL 943371, at *2 (4th Cir. Mar. 28, 2025) (per curiam) (similar); *Goldovsky v. Rauld*, No. 6:24-cv-00159, 2025 WL 942620, at *6 (W.D. Tex. Feb. 28, 2025) (allegations that out-of-forum party "sent and received 389 wire transfers" were insufficient), *report and recommendation adopted*, 2025 WL 939688 (W.D. Tex. Mar. 27, 2025).

Courts have also held that the kind of conduct the SEC alleges here—"wire transfers facilitated by" a nonresident party but "initiated" by others—are "insufficient to confer jurisdiction." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014); *see also, e.g.*, *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 495 (6th Cir. 2008). Wire transfers received in consideration for providing a service or selling a product are likewise "generally insufficient, by

themselves, to create personal jurisdiction." *Ansah v. Regime PPE*, No. 2:21-cv-08829, 2022 WL 19827373, at *3 (C.D. Cal. Feb. 10, 2022) (citation omitted); *see also*, *e.g.*, *Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 60 (2d Cir. 2019) (rejecting personal jurisdiction over Canadian defendant based on "several wire transfers"); *United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 894 (N.D. Ill. 2002) (similar). Thus, even on the SEC's theory that Gastauer provided his German bank account information to U.S. companies and thus "facilitated" the wire transfers, that could not itself establish that Gastauer is subject to personal jurisdiction in the United States.

3. The Supreme Court's recent decision in *Fuld v. Palestine Liberation Organization*, No. 24-151 (U.S. June 20, 2025), does not change the rule that "due process prohibits" exercising personal jurisdiction over a foreigner who receives funds "that were previously obtained fraudulently" "after-the-fact," *Gastauer I*, 93 F.4th at 10-12. *Fuld* held that the Fourteenth Amendment's minimum-contacts standard for diversity cases does not apply to federal-question cases, where the due-process claim arises under the Fifth Amendment. Slip op. 14, 19-20. The minimum-contacts requirement ensures that States "do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system," but those "interstate federalism concerns" "do not apply to limitations under the Fifth

Amendment upon the power of the Federal Government and the corollary authority of the federal courts." *Id.* at 10-11 (citation omitted).

At the same time, the Supreme Court assumed without deciding that the Fifth Amendment, like the Fourteenth Amendment, entails an inquiry into "the reasonableness" of asserting jurisdiction in a "particular case." *Id.* at 20 (citation omitted). *Fuld* therefore does not disturb this Court's decisions holding that the Fifth Amendment contains such a reasonableness requirement. *See, e.g.*, *Gastauer I*, 93 F.4th at 8, 12; *see also Capen v. Campbell*, 134 F.4th 660, 672 (1st Cir. 2025) ("newly constituted panels in a multi-panel circuit are bound by prior panel decisions") (citation omitted).

A cross-check of the reasonableness factors confirms the District Court had no colorable basis to exercise personal jurisdiction over Gastauer. In assessing the reasonableness of exercising personal jurisdiction, courts consider "the burden on the defendant," "the plaintiff's interest in obtaining relief," "the interests of the forum," and "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113-115 (1987); *see Fuld*, slip op. 20. Ultimately, the question is whether the assertion of personal jurisdiction is tied "to conduct closely related to the United States that implicates important foreign policy concerns," based on, among other things, the foreign party's "relationships with the United States." *Fuld*,

slip op. 14, 17.  The statute at issue in *Fuld* met that standard:  Congress specifically directed that two foreign funders of terrorism with a "longstanding presence in the United States" were subject to personal jurisdiction in the United States by engaging in "specified conduct," including "activities on U.S. soil."  *Id.* at 5, 21 (citation and quotation marks omitted).

Here, by contrast, the statutory authority the SEC asserts does not itself "tie[ ] federal jurisdiction to conduct closely related to the United States."  *Id.* at 14. Because relief defendants are not accused of "any legal wrongdoing," *Gastauer I*, 93 F.4th at 13, the only claim the SEC brought against Gastauer was in equity under 15 U.S.C. § 78u(d)(5), which allows federal courts to grant "equitable relief that may be appropriate or necessary."  *See* JA91.  That provision, however, says nothing about applying extraterritorially.

The Securities Exchange Act is subject to the "longstanding principle of American law" that statutes are presumed to "apply only within the territorial jurisdiction of the United States" unless Congress clearly specifies otherwise, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (citation and quotation marks omitted), a rule that "serves to avoid the international discord that can result when U.S. law is applied to conduct in foreign countries," *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335 (2016).  Although Congress expressly provided for extraterritorial application to those allegedly in "violation of" certain

36

provisions of the Securities Exchange Act, *see* 15 U.S.C. §§ 77v(c), 78aa(b), it declined to do the same for those not accused of any legal wrongdoing—like relief defendants. "[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison*, 561 U.S. at 265. The nonspecific equitable power the SEC asserts bears no resemblance to the statute in *Fuld*, which specifically asserted personal jurisdiction over "two enumerated nonsovereign foreign entities, both of which have been subject to a series of congressional enactments aimed at deterring terrorism and accomplishing other foreign relations objectives." Slip op. 18. Where Congress has not seen fit to explicitly extend the Securities Exchange Act extraterritorially to establish personal jurisdiction over foreign relief defendants like Gastauer, the SEC's and forum's interests are necessarily weak.

Those interests remain weak given that the SEC does not allege that Gastauer has engaged in conduct "bear[ing] a meaningful relationship to the United States." *Id*. at 19. Unlike in *Fuld*, Gastauer undisputedly has no "relationships with the United States"; he lacks a "longstanding presence in the United States" or any "meaningful contacts, ties, and relations with the United States." *See id.* at 17-18, 21 (citations, quotation marks, and alterations omitted); *see also Gastauer I*, 93 F.4th at 13 (Gastauer is a "foreign resident who lacks any relevant contacts with the entire United States"). Gastauer's corresponding lack of any U.S. assets means "the SEC

37

would still have to enforce the order in a foreign tribunal before it could realize any portion of the judgment." *Gastauer I*, 93 F.4th at 13. And whatever burden the SEC might face in suing Gastauer in Germany pales in comparison to the burdens a German senior citizen accused of no legal wrongdoing faces in litigating against a U.S. government agency.

The burden on Gastauer is unconstitutionally severe. Requiring foreign nationals to defend themselves in "a foreign legal system" is a "unique burden[ ]" that must be afforded "significant weight in assessing the reasonableness" of personal jurisdiction. *Asahi Metal*, 480 U.S. at 114. That burden is particularly acute for relief defendants who by definition have done nothing wrong—and unlike in *Fuld*, Congress has not given "clear notice" "that continuing to engage in certain specified conduct would open them up to potential federal court jurisdiction." Slip op. 21. Extending personal jurisdiction to any foreign "after-the-the-fact recipient of funds that were previously obtained fraudulently," *Gastauer I*, 93 F.4th at 10-11, would create a "broad risk of being haled" across the globe into U.S. courts, *Fuld*, slip op. 16.

That consequence is intolerable and contrary to the "[g]reat care and reserve [that] should be exercised when extending our notions of personal jurisdiction into the international field." *Fuld*, slip op. 15 (quoting *Asahi Metal*, 480 U.S. at 115); *see Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998) ("[C]ourts must exercise

even greater care before exercising personal jurisdiction over foreign nationals"). "[O]ther nations would surely look askance" if a foreign national lacking any relationship with the United States could be haled into American courts. *Hawkins*, 935 F.3d at 231. And that kind of "careless extension of personal jurisdiction over foreigners could antagonize other nations and make them less likely to respect our judgments," *id.*, or "other nations might respond in kind by haling Americans into their courts under expansive theories of jurisdiction," *Fuld*, slip op. 14. "[S]uch considerations of international rapport thus reinforce [the] determination that exercising in personam jurisdiction over Gastauer would not accord with the fair play and substantial justice due process demands." *Gastauer I*, 93 F.4th at 13 (citations, quotation marks, and brackets omitted).

### B. The District Court Erred By Refusing To Dismiss And Approving A Fishing Expedition Under The Guise Of Jurisdictional Discovery.

1. Without a plausible basis to assert personal jurisdiction over Gastauer, the District Court was obligated to order Gastauer dismissed from the case. Its legal error in failing to do so is reviewed de novo. *See supra* p. 27. However, even if the standard is an abuse of discretion, *see supra* pp. 27-28, the District Court erred in granting the SEC jurisdictional discovery and then sanctioning Gastauer.

"[J]urisdictional discovery is not available on demand." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022). "Instead, a plaintiff

who seeks jurisdictional discovery must make 'a colorable claim of jurisdiction.'" *Id.* (citation omitted). It must also "present facts to the court which show why jurisdiction would be found if discovery were permitted." *Negrón-Torres*, 478 F.3d at 27 (citation omitted). Mere "conclusory allegations" do not suffice. *Id.* at 25, 27.

The SEC met none of those requirements, and the District Court's order granting jurisdictional discovery was therefore wrong under any standard. *Motus*, 23 F.4th at 128; *see Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982) ("When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted."); *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009) (district court abused discretion by permitting case to proceed to jurisdictional discovery based on allegations that are "insufficient as a matter of law to establish" jurisdiction). This Court had already held that "due process prohibits" exercising personal jurisdiction based on the "receipt of a unilateral transfer of money from a third party." *Gastauer I*, 93 F.4th at 12. The District Court likewise acknowledged that such allegations "fall[ ] short" of establishing personal jurisdiction. Add.13. And the SEC did not identify any facts that would "show why jurisdiction would be found if discovery were permitted." *Negrón-Torres*, 478 F.3d at 27 (citation omitted). Indeed, the SEC did not identify a *single* case finding personal jurisdiction where an out-of-forum party received money after providing bank account information or otherwise "facilitated" the transaction. *See* JA237-241.

The District Court's only basis for ordering jurisdictional discovery was its belief that discovery would "shed light" on Gastauer's "involvement in financial transactions in the United States," including his "role in obtaining funds from bank accounts in the United States."  Add.13-14 (citation and quotation marks omitted). This misconstrues the role of jurisdictional discovery.  Jurisdictional discovery is "intended to supplement, not substitute for, initial jurisdictional allegations," and is not permitted where, as here, "the initial jurisdictional allegations are patently inadequate."  *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 121-122 (D.D.C. 2005); *see Am. Well Corp. v. Indegene Ltd.*, 761 F. Supp. 3d 249, 262 (D. Mass. 2024) ("since Plaintiff has not made any colorable claim, jurisdictional discovery is unwarranted").  The SEC candidly acknowledged it "does not have evidence" of any "regularity and consistency" of supposed "financial transactions in the United States, or bank accounts in the United States."  JA236.

The mere chance of uncovering some basis for personal jurisdiction in "internal financial" documents regarding "money transfer[s]" did not warrant jurisdictional discovery, either.  *Beck v. Bronstein*, No. 1:23-cv-10416, 2023 WL 5833116, at *14 (D. Mass. Sept. 8, 2023) (citation omitted).  That is the definition of "a fishing expedition."  *Id.* (citation omitted).  But "a mere hunch that discovery might yield jurisdictionally relevant facts" is "insufficient."  *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864-865 (9th Cir. 2022) (citation, quotation marks,

and alteration omitted). Otherwise, Plaintiffs could always "undertake a fishing expedition" in the hopes of stumbling across potentially useful information "under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).

These concerns are particularly acute given "Gastauer's status as a foreign resident." *Gastauer I*, 93 F.4th at 13. The same concerns animating the "[g]reat care and reserve" that courts must exercise in "extending our notions of personal jurisdiction into the international field," *Fuld*, slip op. 15 (quoting *Asahi Metal*, 480 U.S. at 115), apply to jurisdictional discovery: "Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000); *see Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-186 (2d Cir. 1998). Indeed, ordering jurisdictional discovery over foreign nationals without ties to the United States raises serious constitutional concerns. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 715 (1982) (Powell, J., concurring in the judgment) (explaining that allowing "a 'fishing expedition' in a foreign jurisdiction" violates due process). Because the SEC lacked a "substantial[ ]" claim of jurisdiction, allowing jurisdictional discovery was "a misuse of judicial process." *Id.* at 708 (majority opinion).

Gastauer's challenge to the District Court's discovery order does not require a standalone showing of prejudice. *See supra* p. 28. But even if this Court disagrees, the prejudice to Gastauer is plain. He is an older German citizen who speaks little English, has no relationship with the United States, and is not accused of "any legal wrongdoing." *Gastauer I*, 93 F.4th at 4, 13. This case should have ended more than six years ago, when Gastauer moved to dismiss for lack of personal jurisdiction. This Court's decision last year should have finally ended his ordeal. The District Court nevertheless greenlit the SEC's baseless and wide-ranging request for jurisdictional discovery, continuing to harass Gastauer.

2. At minimum, the District Court abused its discretion in failing to address the constitutional problems inherent in ordering jurisdictional discovery over foreign defendants. *See Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 90 (1st Cir. 2020) ("Abuse of discretion occurs when a material factor deserving significant weight is ignored . . . .") (citation and quotation marks omitted).

Moreover, the District Court's "failure to consider the adequacy of lesser sanctions contribute[s] to a finding of abuse of discretion." *Benitez-Garcia v. Gonzalez-Vega*, 468 F.3d 1, 6 (1st Cir. 2006). Rather than hold specific personal jurisdiction conclusively established and reinstating the default judgment, Add.16, the District Court should have considered whether to hold as established only the "facts" the SEC "was seeking to establish through discovery," *see Ins. Corp. of*

*Ireland*, 456 U.S. at 709—namely, that Gastauer "facilitated" the wire transfers.  The "particular legal consequence—personal jurisdiction of the court"—would not have "follow[ed]" from holding those facts as established.  *Cf. id.*  The District Court erred in sanctioning Gastauer with an ultimate legal conclusion of personal jurisdiction, rather than deeming admitted only the facts upon which the SEC asserted personal jurisdiction—which could not have supported personal jurisdiction.

## III.    THE DISTRICT COURT ABUSED ITS DISCRETION BY ORDERING JURISDICTIONAL DISCOVERY UNDER THE FEDERAL RULES AS A MATTER OF FIRST RESORT.

The District Court's order compelling discovery also ran afoul of the Hague Evidence Convention, a multi-nation agreement governing how litigants in one country obtain evidence from a party in another.  *See* 28 U.S.C. § 1781.  The District Court erred by sidelining this treaty and instead ordering jurisdictional discovery under the Federal Rules of Civil Procedure.  Even if the Hague Evidence Convention did not have to be the first step, the District Court erred by failing to evenhandedly analyze the relevant comity interests before ordering discovery under the Federal Rules.  The court's anti-treaty bias was improper, unsubstantiated, and an abuse of discretion.

**A.    Jurisdictional Discovery Cannot Proceed Against A Foreign Party Under The Federal Rules Without First Requiring Compliance With The Hague Evidence Convention.**

Interpreting the Hague Evidence Convention's requirements begins with the treaty's text and context. *Water Splash, Inc. v. Menon*, 581 U.S. 271, 276 (2017). Courts also consider "the negotiation and drafting history of the treaty as well as the postratification understanding of signatory nations," *Medellín v. Texas*, 552 U.S. 491, 507 (2008) (citation and quotation marks omitted), and refrain from any interpretation that would "render the [treaty] meaningless," *Abbott v. Abbott*, 560 U.S. 1, 13 (2010).

1.  The text and context of the Hague Evidence Convention require courts to apply the treaty as a matter of first resort when failing to do so would undermine "mutual judicial co-operation in civil or commercial matters." *See* Preamble, Hague Evidence Convention.   Courts give a treaty's preamble significant weight in determining what the agreement requires. *See, e.g.*, *Water Splash*, 581 U.S. at 276 (interpreting preamble of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters); *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000) (interpreting preamble to the Vienna Convention on Consular Relations).   The Hague Evidence Convention's preamble provides that "[t]he States signatory to the present Convention" intended "to improve mutual judicial co-operation in civil or commercial matters" and "resolved to conclude a

Convention to this effect." Preamble, Hague Evidence Convention. This provision requires signatories to prioritize the Hague Evidence Convention's procedures when declining to do so would jeopardize the treaty's stated objective.

Context confirms this. The United States urged the drafting and passage of the Hague Evidence Convention due to a "need for an effective international agreement" that could "bridge differences between the common law and civil law approaches to the taking of evidence abroad." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 531 (1987). In common-law jurisdictions like the United States, private parties drive the evidence-gathering process. *See* Rapport de la Commission spéciale (Report of the Special Commission), *as reprinted in* 4 Conference de La Haye de droit international prive: Actes et documents de la Onzième session (1968), at 55, 56 (1970 ed.) (hereinafter "1970 Commission Report").[3] But civil-law jurisdictions view this as a judicial function and may deem the unauthorized gathering of evidence to violate their "judicial sovereignty." *See id.* at 56; *Aérospatiale*, 482 U.S. at 557-558 (Blackmun, J., concurring in part and dissenting in part). Some civil-law countries bar pretrial discovery altogether. Gary B. Born, *The Hague Evidence Convention Revisited: Reflections On Its Role In U.S. Civil Procedure*, Law & Contemp. Probs. 77, 82-83 (1994).

---

[3] *Available at* https://perma.cc/D7RA-92FF (French/English).

The Hague Evidence Convention "harmonize[d] these different concepts" and created a process "which would be acceptable to all the differing systems." 1970 Commission Report at 56; *see Aérospatiale*, 482 U.S. at 530. Common-law countries agreed to a narrower, more regulated discovery process; in exchange, civil-law countries ceded some judicial sovereignty over evidence collection. Gary B. Born & Scott Hoing, *Comity and the Lower Courts: Post-Aérospatiale Applications of the Hague Evidence Convention*, 24 Int'l Law. 393, 396-397 (1990). This compromise fosters the multi-national cooperation that the treaty's preamble describes—a system that "would be tolerable to the state executing the request and would produce evidence utilizable in the requesting state." *Aérospatiale*, 482 U.S. at 530 (citation and quotation marks omitted).

2. Post-ratification understandings of the treaty also show that the Hague Evidence Convention requires some minimum adherence its procedures. The Supreme Court's decision in *Aérospatiale*, and the events that followed, provide a prime example.

In *Aérospatiale*, the Supreme Court held the Hague Evidence Convention does not provide the exclusive means for collecting evidence abroad and that the treaty does not have a "first use" requirement for parties engaged in merits discovery. *See* 482 U.S. at 534, 542. Even so, the Court limited its decision to cases where "the

court has personal jurisdiction" over a foreign adversary. *Id.* at 524; *see id.* at 540 n.25.

When a Special Commission on the Hague Evidence Convention convened two years later, there was "extensive discussion[ ]" about the relationship between the Hague Evidence Convention and the signatories' domestic procedural rules. Hague Conference on Private International Law: Special Commission Report on the Operation of the Hague Service Convention and the Hague Evidence Convention (Apr. 1989), *reprinted at* 28 I.L.M. 1556, 1565 (1989). Some delegations denounced *Aérospatiale*, "taking the view that the Convention . . . excluded application of domestic procedural rules whenever the evidence was physically located or the witness was physically residing abroad." *Id.* Others believed the Convention was "parallel and complementary" to each country's domestic procedures. *Id.* The Commission ultimately concluded that, "in all Contracting States, whatever their views as to its exclusive application, priority should be given to the procedures offered by the Convention when evidence located abroad is being sought." *Id.* at 1569.

Since then, the United States has rejected attempts to broaden *Aérospatiale*. In 1989, the Judicial Conference Advisory Committee on the Federal Rules of Civil Procedure proposed revising Rule 26(a) to give courts broad authority to order discovery "not prohibited by" the Hague Evidence Convention. Born, *The Hague*

48

*Evidence Convention Revisited*, *supra*, at 92.  Following international outcry, the Supreme Court refused the Committee's initial and revised proposals to expand Rule 26.  *Id.* at 96.  To date, the Supreme Court has not extended *Aérospatiale* beyond merits discovery, and Rule 26(a) remains silent on its relationship to the Hague Evidence Convention.

3.  The District Court erred by allowing the SEC to pursue jurisdictional discovery under the Federal Rules of Civil Procedure as a matter of first resort. Gastauer is a citizen and resident of Germany—a signatory to the Hague Evidence Convention.  JA208-209; *see* Status Table: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (last updated 6-V-2025).[4]  But the SEC refused to comply with the required Hague Evidence Convention procedures.  The District Court twice allowed this approach—after erroneously concluding it had personal jurisdiction over Gastauer, Add.7-9, and again post-remand, when the District Court *acknowledged* the SEC's complaint "f[ell] short" of establishing personal jurisdiction, yet nevertheless permitted the SEC to conduct jurisdictional discovery including by deposing Gastauer, Add.13-14.

Conducting jurisdictional discovery against a foreign litigant by first resorting to domestic law substantially undermines the Hague Evidence Convention and thus

---

[4] *Available at* https://perma.cc/2ZXX-8TNT.

violates the treaty. The treaty's effectiveness "is largely a function of the willingness of courts and litigants to attempt to use it, to balance and accommodate, not to serve merely parochial interests." *Knight v. Ford Motor Co.*, 615 A.2d 297, 301 (N.J. Super. Ct. 1992). The clearest occasion to subordinate parochial interests to the interests of a foreign sovereign is when the forum court may lack personal jurisdiction over a citizen and resident of another country. *See id.* at 301 & n.11 ("If jurisdiction does not exist over a foreign party . . . the Convention may provide the only recourse for obtaining evidence."); *Jenco v. Martech Int'l, Inc.*, No. 86-4229, 1988 WL 54733, at *1 (E.D. La. May 19, 1988) (applying the Hague Evidence Convention because "the interests of protecting a foreign litigant in light of the jurisdictional problems are paramount").

In *Knight*, as here, plaintiffs sought evidence from a German defendant. 615 A.2d at 297-298. But unlike the court below, the trial court held that "evidence to be taken in or gathered from within Germany must be pursued under the Hague Evidence Convention." *Id.* at 298. The court explained that although American-style discovery "can be a cause of 'much friction' abroad," signatories of the Hague Evidence Convention "have shown good faith in accommodating their own procedures to unfamiliar practices that might arise in transactional litigation." *Id.* at 299-300 (quoting Restatement (Third) of Foreign Relations Law of the United States, § 442 (Reporters' Note 1) (1987)). These accommodations—made by some

of the United States' "most prominent trading partners"—required reciprocity for the treaty to remain effective. *Id.* at 301-302. Thus, it was "appropriate to remit the parties who desire to obtain evidence from within Germany . . . to first us[e] the procedures of the Convention before resorting to domestic procedures." *Id.* at 302.

The District Court should have taken the same approach here. Allowing the United States to conduct discovery within Germany's borders on terms that Germany did not consent to is an affront to Germany's sovereignty. Indeed, Gastauer refused to comply with the discovery requests "as currently served" because doing so would have "violate[d] German law." JA285. Germany backs this up. The country has repeatedly appeared as *amicus curiae* in cases involving the Hague Evidence Convention and explained that "[t]he taking of evidence is a judicial function exclusively reserved to the courts of the Federal Republic of Germany." Brief for the Federal Republic of Germany as Amicus Curiae, *Anschuetz & Co., GmbH v. Miss. River Bridge Auth.*, 483 U.S. 1002 (1987) (No. 85-98), *as reprinted in* Brief for the Federal Republic of Germany as Amicus Curiae, *Aérospatiale*, 482 U.S. 522 (No. 85-1695), 1986 WL 727492, app. A, at *10a-11a.[5] And when an American court "orders a person, under the threat of sanctions," to "remove

---

[5] *See also, e.g.*, Brief of Amicus Curiae, Federal Republic of Germany, *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004) (No. 02-4272), 2003 WL 24136399; Brief for the Federal Republic of Germany as Amicus Curiae, *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) (No. 86-1052), 1987 WL 881149.

documents located in Germany to the United States" or "to be available for oral depositions," German sovereignty is violated. *Id.*

Requiring discovery to proceed under the Federal Rules was also fundamentally unfair. Unlike the Hague Evidence Convention, which complies with German law and guarantees Gastauer access to German-translated discovery requests, the District Court's discovery order compelled a German octogenarian to participate in a deposition, with a foreign governmental agency, in a foreign language—all without counsel and in violation of his home country's laws. *See* JA286.

The absence of a colorable basis for jurisdiction worsens this violation. Even courts that have extended *Aérospatiale* to jurisdictional discovery have acknowledged the need for plausible allegations of personal jurisdiction, as "bare-boned allegations . . . could lead to the fishing expeditions of obvious concern to the signatory countries." *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 50 (D.D.C. 2000). Gastauer is not aware of *any* decision—other than the decision below—that has compelled a foreign litigant to participate in jurisdictional discovery under the Federal Rules absent a colorable case for personal jurisdiction. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 302-303 (3d Cir. 2004) (allowing first resort to the Federal Rules for jurisdictional discovery where plaintiff alleged a

prima facie case of personal jurisdiction); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d at 50 (similar).  The District Court erred in doing so here.

### B. Even If *Aérospatiale*'s Balancing Test Applied, The District Court's Application Of That Test Was An Abuse Of Discretion.

If *Aérospatiale* applies to jurisdictional discovery, it requires evenhanded consideration of "the demands of comity."  482 U.S. at 546.  Before deviating from the Hague Evidence Convention, courts must conduct a "particularized analysis," considering (1) the importance to the litigation of information requested; (2) the "specificity of the request"; (3) "whether the information originated in the United States"; (4) "the availability of alternative means of securing the information"; and (5) "the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."  *Id.* at 543-544 & n.28.  The District Court glossed over these factors, allowing unsubstantiated concerns about expediency to drive the analysis.  *See* Add.13-14.  This was an abuse of discretion.  *See In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 52 (1st Cir. 2005) ("[C]ourt abused its discretion by . . . committing a palpable error of judgment in calibrating the decisional scales") (citation and quotation marks omitted).

*First*, the District Court did not acknowledge that the information requested originated outside of the United States, and said nothing of how it accounted for that

factor.  *See* Add.13-14.  This alone is an abuse of discretion.  *In re Pub. Offering*, 427 F.3d at 52 (court abuses its discretion "by overlooking a relevant factor").

*Second*, the court's assessment of Germany's interest in having discovery proceed under the Hague Evidence Convention reflects a "palpable error of judgment."  *Id.* (citation and quotation marks omitted).  The District Court stated that it was "unaware of any important German interest that the [requested] discovery would undermine," as "[c]ourts have routinely required German nationals to sit for U.S.-style depositions."  Add.14.  Germany would like a word.  It has consistently asserted an interest "apply[ing] its laws to the production of documents located in Germany and deposition of witnesses who reside in Germany."  *E.g.*, Brief of Amicus Curiae, Federal Republic of Germany, *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004) (No. 02-4272), 2003 WL 24136399, at *1.  And "where the question of personal jurisdiction has not been resolved, Germany's interest in ensuring that the gathering of evidence on its soil be conducted in a manner consistent with German law" is at its highest.  *Id.* at *8-9.  Germany's interest in preserving its judicial sovereignty does not cease to exist merely because American courts have at times overridden it.

In any event, the District Court's three examples of compelled depositions are inapt.  One justified its departure from the Hague Evidence Convention by pointing to the existence of personal jurisdiction over the foreign defendant—a fact that does

not exist here. *Work v. Bier*, 106 F.R.D. 45, 55-57 (D.D.C. 1985). The other two did not involve the Hague Evidence Convention at all. *See SEC v. Volkswagen Aktiengesellschaft*, No. 3:19-cv-01391, 2023 WL 1927244, at *2 (N.D. Cal. Feb. 10, 2023); *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 165 F.R.D. 65 (E.D. Mich. 1996).

*Third*, the District Court's conclusion that the SEC lacked alternative means of securing the requested information was without "support in inferences that may be drawn from the facts in the record." *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985). The court concluded that a need for expediency required resorting first to the Federal Rules because the case remained "stalled on the crucial threshold issue of jurisdiction" after five years of litigation. Add.14 (citation and quotation marks omitted). But nothing in the record indicates that the Hague Evidence Convention's procedures for deposing Gastauer were not viable or would add undue delay. To the contrary, Germany recently amended its reservations to the Hague Evidence Convention, expanding its willingness to facilitate pre-trial discovery under the treaty. *See Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*, No. 5:23-cv-05721, 2025 WL 68136, at *4 (N.D. Cal. Jan. 10, 2025). The District Court's view that the Hague Evidence Convention would "no doubt extend the timeline further than necessary" was pure speculation. *See* Add.14.

Eliminating protections for a foreign litigant was particularly rash here where Gastauer was not at fault for any delay. Gastauer sought dismissal for lack of personal jurisdiction at the earliest opportunity. JA105. The proceedings have spanned half a decade in large part because the SEC offered—and the District Court accepted—a "novel" theory of personal jurisdiction that (as Gastauer argued from the outset) was legally baseless. *Gastauer I*, 93 F.4th at 10-11.

### C. Declining To Apply The Hague Evidence Convention Prejudiced Gastauer.

Again, although a showing of prejudice is not required, *supra* p. 28, the District Court prejudiced Gastauer by refusing to require compliance with the Hague Evidence Convention before resorting to the Federal Rules. The law does not place litigants "between a rock and a hard place, requiring them to either forfeit a defense of their position on the merits, or waive their due process rights." *See Gastauer I*, 93 F.4th at 6-7. The choice imposed by the District Court's discovery order was even worse: Gastauer could either violate the order or violate German law. *See* JA285-287. Given that Gastauer is a citizen and resident of Germany, the choice was clear. He could not comply with the court's or the SEC's extraterritorial demands.

Because Gastauer chose to comply with the laws of his home country, the District Court assumed the existence of personal jurisdiction against Gastauer and entered a default judgment for nearly $4.7 million. Add.26-28. Giving priority to

the Hague Evidence Convention's procedures would have very likely avoided this untenable result.  The prejudice of the District Court's error is plain.

## CONCLUSION

The District Court's judgment should be reversed and the case remanded with instructions to dismiss Gastauer for lack of personal jurisdiction.  At minimum, this Court should vacate the judgment and order that any jurisdictional discovery be served according to the Hague Evidence Convention.

Respectfully submitted,

/s/ Jo-Ann Tamila Sagar
JO-ANN TAMILA SAGAR
DANA A. RAPHAEL
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-6454
jo-ann.sagar@hoganlovells.com

JOHANNAH CASSEL-WALKER
HOGAN LOVELLS US LLP
4 Embarcadero Center
Suite 3500
San Francisco, CA 94111

*Counsel for Appellant Raimund Gastauer*

July 7, 2025

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,980 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

Dated:  July 7, 2025                          /s/ Jo-Ann Tamila Sagar
                                              Jo-Ann Tamila Sagar

## CERTIFICATE OF SERVICE

I certify that on July 7, 2025, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Jo-Ann Tamila Sagar
Jo-Ann Tamila Sagar

**ADDENDUM**

# TABLE OF CONTENTS

<u>Page</u>

Electronic Order Denying Raimund Gastauer's Motion to Dismiss for
Lack of Jurisdiction; Denying B21 Ltd.'s Motion to Dismiss for
Lack of Jurisdiction; Denying WB21 DMCC's Motion to Dismiss
for Lack of Jurisdiction (Apr. 26, 2019) (ECF No. 135)........................Add.1

Memorandum and Order on Plaintiff's Motion for Sanctions
(Oct. 7, 2022) (ECF No. 285)....................................................................Add.2

Electronic Order Requesting Supplemental Briefing on Jurisdiction
(Apr. 16, 2024) (ECF No. 314) ...............................................................Add.12

Electronic Order Granting in Part and Denying in Part Motion to
Exercise Specific Personal Jurisdiction Over Relief Defendant
Raimund Gastauer (ECF No. 317) .........................................................Add.13

Electronic Order Granting Motion for Sanctions (Aug. 6, 2024)
(ECF No. 328) .........................................................................................Add.16

Memorandum And Order On Plaintiff's Renewed Motion For Summary
Judgment (Jan. 29, 2025) (ECF No. 342)...............................................Add.18

Final Judgment as to Relief Defendant Raimund Gastauer (Jan. 29, 2025)
(ECF No. 343) .........................................................................................Add.26

15 U.S.C. § 77v(c) .......................................................................................Add.29

15 U.S.C. § 78u(d)(5)...................................................................................Add.30

15 U.S.C. § 78aa(b).......................................................................................Add.31

# *Securities and Exchange Commission v. Knox et al*

**Massachusetts District Court**

Case no. 1:18-cv-12058-RGS (D. Mass.)
Filed date: April 26, 2019
Docket entry no.: 135

Docket text:

Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 118 Raimund Gastauer's Motion to Dismiss for lack of jurisdiction; denying 120 B21 Ltd.'s Motion to Dismiss for Lack of Jurisdiction; denying 122 WB21 DMCC's Motion to Dismiss for Lack of Jurisdiction. See Smith v. SEC,653 F.3d 121, 128 (2d Cir. 2011); SEC v. Thibeault,80 F. Supp. 3d 288, 294-295 (D. Mass. 2015). (Zierk, Marsha) (Entered: 04/26/2019)

This PDF was generated on April 02, 2025 by PacerPro for a text-only docket entry synced on March 11, 2025.

https://app.pacerpro.com/cases/8472168

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12058-RGS

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff

v.

ROGER KNOX, WINTERCAP S.A., MICHAEL T. GASTAUER, WB21 US
INC., SILVERTON SA INC., WB21 NA INC., C CAPITAL CORP.,
WINTERCAP SA INC., and B2 CAP INC.,
Defendants

and

RAIMUND GASTAUER, SIMONE GASTAUER FOEHR, B21 LTD.,
SHAMAL INTERNATIONAL FZE, and WB21 DMCC,
Relief Defendants

MEMORANDUM AND ORDER
ON PLAINTIFF'S MOTION FOR SANCTIONS

October 7, 2022

STEARNS, D.J.

On June 3, 2022, this court entered summary judgment against eight

defendants and relief defendants in this securities fraud action. The court

also allowed in part and denied in part plaintiff Securities and Exchange

Commission's (the Commission or SEC) motion for summary judgment as to

relief defendant Raimund Gastauer. The court, however, ordered Gastauer

to submit to a deposition as a remedy for his failure to comply with discovery

as ordered.   Gastauer refused to participate in the deposition, leading the Commission to move for sanctions.   For the following reasons, the court <u>ALLOWS</u> the motion for sanctions and orders summary judgment for the Commission.

## BACKGROUND

The facts of the case are set forth in the court's summary judgment opinion (Dkt # 263), and the court here recites only those facts relevant to the sanctions motion.

Defendant Michael Gastauer owned a group of entities that Roger Knox used to launder the proceeds of his fraud, which involved the sale of over $150 million of unregistered penny stocks.   Michael Gastauer transferred certain of the laundered funds to relief defendants B21 Ltd., WB21 DMCC, and his father Raimund Gastauer.   The court previously found that the Commission had established that Raimund had received $500,000 in proceeds from the fraud transferred to a bank account in his name by entities controlled by his son.   However, the court denied the Commission's motion for summary judgment on its claim for disgorgement relating to two additional transfers totaling $2,815,305.   The Gastauer Family Trust (GFT Investment Holdings) had used those transfers to

2

purchase a condominium at 3 Dollar Bay Place, London (the Dollar Bay Property). Raimund Gastauer submitted evidence and a sworn declaration asserting that he had no interest in GFT Investment Holdings or the Dollar Bay Property at the time of the purchase and therefore was improperly named as a relief defendant.

Because Gastauer had failed to produce this evidence or to articulate this new theory during the discovery period, the court entered a supplemental discovery schedule permitting the Commission to depose Gastauer by July 18, 2022. The Commission noticed a video deposition for July 12, 2022, then postponed it to July 18 at Gastauer's attorney's request. On July 13, 2022, Gastauer's counsel informed the SEC that Gastauer did not intend to sit for the deposition. Consequently, the Commission moved for sanctions that would include granting the Commission's motion for summary judgment in full.

## DISCUSSION

### A.    Personal Jurisdiction

Gastauer does not deny that he refused to sit for the mandated deposition. Nor does he disagree that summary judgment is an appropriate sanction. Instead, while acknowledging the court's previous order to the

3

contrary (Dkt # 135), Gastauer again argues that the court lacks personal jurisdiction over him. For that reason, he disclaims any duty to attend a deposition not noticed under the requirements of the Hague Convention for Taking Evidence Abroad in Civil and Commercial Matters (Hague Convention). While the court adheres to its previous ruling on personal jurisdiction, it will briefly explain why it disagrees with Gastauer's untimely argument.[1]

A relief defendant is someone who gratuitously receives the proceeds of a fraud without a legitimate claim. *See S.E.C. v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998). While relief defendants are often banks, trustees, or other custodians, "the term is broad enough to encompass persons who are in possession of funds to which they have no rightful claim, such as money that has been fraudulently transferred by the defendant in the underlying securities enforcement action." *S.E.C. v. Ross*, 504 F.3d 1130, 1141 (9th Cir. 2007). To prevent a defendant from misappropriating fraudulent gains, a court may order a relief defendant to disgorge the ill-gotten funds they received. *See S.E.C. v. World Capital Mkt., Inc.*, 864 F.3d 996, 1003 (9th

---

[1] Gastauer did not move for reconsideration of the court's initial order denying his motion to dismiss, nor did he seek relief before unilaterally refusing to sit for his court-ordered deposition.

4

**Add.5**

Cir. 2017).

Because a relief defendant simply holds a fraudster's spoils, "both subject matter jurisdiction over the nominal party and personal jurisdiction over the nominal party [are] unnecessary provided that there [is] subject matter and personal jurisdiction over the real parties and the nominal party [holds] property as a mere custodian for the real parties in interest." *S.E.C. v. Harden*, 2005 WL 2649857, at *3 (W.D. Mich. Oct. 17, 2005); *cf. World Capital Mkt.*, 864 F.3d at 1004 (finding a relief defendant may be joined without the assertion of subject matter jurisdiction). The reason for this rule is obvious: "the S.E.C. must have the ability to prevent scam sellers of securities to secrete funds and must have the ability to reach those funds when the nominal party lacks any legal interest in the funds." *Harden*, 2005 WL 2649857, at *3. Indeed, this case perfectly illustrates why a defendant's contacts with the United States may be imputed to a relief defendant. To rule otherwise would allow Michael Gastauer to evade the SEC's disgorgement authority — and stash the proceeds of a scheme to defraud American investors — by sending millions in unlawful earnings to his father in Germany.

Raimund Gastauer does not deny that the court had personal

jurisdiction over his son Michael.   The court previously found that he had received at least $500,000 in ill-gotten gains to which he had no legitimate claim.   Accordingly, the court properly ordered his deposition and the Commission properly noticed it.[2]

## B.    Hague Convention

The court also disagrees with Gastauer that the Commission should have noticed the deposition under the Hague Convention.   *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987).   The court looks to the principles of comity articulated by the Supreme Court in determining whether to order compliance with the Hague Convention's procedures.   These principles include:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine

---

[2] The court takes no position whether, as Gastauer argues, a German court would refuse to enforce judgment against him because of his lack of contacts with the United States.   This argument was not timely raised and is irrelevant to these proceedings.

6

important interests of the state where the information is located.

*Id.*   Some courts have added two additional factors: "(1) good faith of the party resisting discovery; and (2) the hardship of compliance on the party or witness from whom discovery is sought." *Axtria Inc. v. OKS Grp., LLC*, 2022 WL 774038, at *1 (E.D. Pa. Mar. 15, 2022).

The principles of comity weigh against application of the Hague Convention's procedures here.  *See Wu v. Sushi Nomado of Manhattan, Inc.*, 2021 WL 7186735, at *10-11 (S.D.N.Y. Oct. 29, 2021).   First, the deposition is important to the litigation, as it will complete the record regarding the only remaining question arising from the Commission's motion for summary judgment: Gastauer's interest in the Dollar Bay Property.   Second, the deposition request is specific and arises from a court order.   Third, the information at issue did not originate in the United States, a factor weighing in favor of Gastauer.   Fourth, Gastauer has not pointed to any alternative means to secure information related to his interest in the Dollar Bay Property.   Fifth, noncompliance would undermine the United States' interest in pursuing the proceeds of fraud.   Sixth, Gastauer's insistence that the court lacks personal jurisdiction over him despite its order to the contrary suggests at least willful blindness, if not bad faith.   And

7

seventh, participating in a video deposition would not represent an undue hardship to Gastauer. On balance, the principles of international comity weigh against applying the Hague Convention, and the Commission properly noticed the deposition under the Federal Rules of Civil Procedure.

### C.    Sanction

The Commission asks the court to sanction Gastauer by granting its motion for summary judgment. The court may sanction a party who fails to obey an order to participate in a deposition by

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

The court examines a non-exhaustive list of factors in fashioning an appropriate sanction, including "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions."

8

*AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015).

After reviewing the relevant factors, the court finds it appropriate to enter summary judgment against Gastauer. Gastauer's discovery violations have been severe and repetitive: he initially failed to produce relevant documents in discovery and then used those documents to surprise the Commission with a new theory on summary judgment. His deliberate failure to attend the deposition that the court ordered as an initial lesser remedy prevents the Commission from responding to his novel defense. Gastauer's excuse is his continued belief that the court should have dismissed the case for lack of personal jurisdiction, an argument the court rejected more than three years ago. Now that the more lenient sanction of a compelled deposition has failed to secure Gastauer's cooperation, the Commission is left without the means to respond to his surprise defense. Summary judgment is therefore appropriate.

## ORDER

For the foregoing reasons, the Commission's motion for sanctions is ALLOWED. The Clerk will enter judgment against relief defendant Raimund Gastauer.

SO ORDERED.

9

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

10

**Add.11**

# *Securities and Exchange Commission v. Knox et al*

**Massachusetts District Court**

Case no. 1:18-cv-12058-RGS (D. Mass.)
Filed date: April 16, 2024
Docket entry no.: 314

Docket text:

> Judge Richard G. Stearns: ELECTRONIC ORDER entered. The First Circuit having reversed and remanded the court's entry of judgment against Raimund Gastauer, the court requests supplemental briefing on the issue of whether Gastauer had sufficient minimum contacts with the forum for the court to exercise personal jurisdiction over him. The SEC will file an opening brief by April 30, 2024, and Gastauer will file an opposition by May 14, 2024. Reply only with leave of court. (RGS, law4) (Entered: 04/16/2024)

This PDF was generated on April 02, 2025 by PacerPro for a text-only docket entry synced on March 11, 2025.

https://app.pacerpro.com/cases/8472168

# Securities and Exchange Commission v. Knox et al

**Massachusetts District Court**

Case no. 1:18-cv-12058-RGS (D. Mass.)
Filed date: May 16, 2024
Docket entry no.: 317

Docket text:

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting in part and denying in part 315 Motion to Exercise Specific Personal Jurisdiction over Relief Defendant Raimund Gastauer. After the First Circuit reversed this court's entry of a final judgment against relief defendant Raimund Gastauer, this court requested supplemental briefing to assess whether the court could nonetheless exercise personal jurisdiction over Gastauer. Plaintiff U.S. Securities and Exchange Commission (SEC) moved to exercise specific personal jurisdiction over Gastauer or, in the alternative, to take jurisdictional discovery. For the reasons that follow, the court will deny the SEC's motion to exercise personal jurisdiction without prejudice but will allow the SEC to take jurisdictional discovery. Specific personal jurisdiction "exists when there is a demonstrable nexus between a plaintiffs claims and a defendant's forum-based activities." Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). A specific jurisdiction analysis has three parts: whether (1) "the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum"; (2) the defendant's contacts "constitute purposeful availment of the benefits and protections afforded by the forum's laws"; and (3) exercising jurisdiction is reasonable. Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999). The SEC's claim against Gastauer is that his son, Michael Gastauer, wired him over $3.3 million of ill-gotten gains reaped from Michael's fraudulent securities activity. (The SEC does not allege that Gastauer engaged in any wrongdoing or knew that Michael's conduct was unlawful.) The SEC cites three wire transfers from United States banks that it asserts establish personal jurisdiction over Gastauer: (1) a wire from a WB21 US Inc. bank account located in the United States to a German bank account in Gastauer's name in December of 2017; and (2) two wires from a C Capital Corp. bank account located in the United States to a Grant Saw Solicitors LLP client account located in England in February of 2018. Michael owned WB21 and C Capital. The SEC alleges that the transfers to Grant Saw were payments for the purchase of a condominium in London in the name of GFT Investment Holdings SA. The SEC claims that Gastauer was the Trustee of GFT at the time, but Gastauer disputes as much. On the current record, the connection between the wires and Gastauer's in-forum conduct falls short of supporting the SEC's claim of personal jurisdiction over Gastauer. The SEC surmises that Gastauer "must have provided the name and account number of his personal bank account in Germany in order for WB21 US Inc. to have given that information to Citibank to facilitate the wire transfer." Dkt. # 315 at 6. Without more, this averment "appear[s] more conclusory than factual," Barrett v. Lombardi, 239 F.3d 23, 29 n.4 (1st Cir. 2001), particularly because Gastauer had previously wired Michael funds in January of 2016, see Dkt. # 316, Ex. A. The January 2016 wire is unrelated to the SEC's present claims against Gastauer. Gastauer's connection to the other two transfers is even more tenuous, as the court previously found that the SEC has not shown that Gastauer controlled GFT in February of 2018. However, because Gastauer "interposes a jurisdictional defense," the SEC is entitled to take jurisdictional discovery if it has been "diligent in preserving [its] rights" and "makes out a colorable case for the existence of in personam jurisdiction." Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997); United States v. Swiss Am. Bank, 274 F.3d 610, 626 (1st Cir. 2001) (emphasis omitted). "The threshold is low: a party must identify a non-frivolous dispute about facts that may yield a sufficient predicate for in personam jurisdiction." Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 128 (1st Cir. 2022). The SEC makes out a colorable case for jurisdiction, and it identifies factual disputes that may show exercising jurisdiction over Gastauer is proper. See, e.g., Dkt. # 315 at 6 (discovery will confirm the extent of

**Add.13**

Gastauer's involvement in financial transactions in the United States); id. at 8 (discovery will shed light on "Gastauer's role in obtaining funds" from bank accounts in the United States). The SEC has also acted diligently in preserving its rights. It requested jurisdictional discovery in its initial opposition to Gastauer's motion to dismiss and again after the First Circuit reversed this court's exercise of jurisdiction over Gastauer. In short, "[w]hen the fish is identified, and the question is whether it is in the pond, [there is] no reason to deny a plaintiff" jurisdictional discovery. Surpitski v. Hughes-Keenan Corp., 362F.2d 254, 256 (1st Cir. 1966). Accordingly, the court will permit jurisdictional discovery on the issue of Gastauer's involvement in financial transactions in the United States involving Michael Gastauer, WB21 US Inc., and C Capital Corp. The SEC may rely on the federal rules, rather than the procedures of the Hague Convention, in doing so. Although there is no binding precedent on the issue, the greater weight of authority holds that the balancing test of Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa, 482 U.S. 522 (1987), applies to jurisdictional discovery. See, e.g., In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d 288, 303-305 (3d Cir. 2004); Rich v. KIS Cal., Inc., 121 F.R.D. 254, 260 (M.D.N.C. 1998); Inventus Power v. Shenzhen Ace Battery, 339 F.R.D. 487, 503-504 (N.D. Ill. 2021). The balancing test considers factors including the importance of the information requested, the specificity of the request, the availability of alternative means of securing the information, and the extent to which compliance (or noncompliance) with the request would potentially undermine important sovereign interests of Germany or the United States. See Aerospatiale, 482 U.S. at 544 n.28. This case is five-and-a-half years old, and yet it remains stalled on "the crucial threshold issue of jurisdiction." See Schindler Elevator Corp. v. Otis Elevator Co., 657 F. Supp. 2d 525, 530-531 (D.N.J. 2009). Use of the Hague procedures - which would require the court to issue a letter request for assistance to a German court - introduces unknown variables that will no doubt extend the timeline further than necessary. This is inconsistent with the "overriding interest in the 'just, speedy, and inexpensive determination' of litigation in our courts." Aerospatiale, 482 U.S. at 542-543, quoting Fed. R. Civ. P. 1. The court is requiring the requests be narrow and limited in number and scope. See Rich, 121 F.R.D. at 260 (ordering jurisdictional discovery in compliance with the federal rules where plaintiffs "limited their discovery requests to ten interrogatories"). And the court is unaware of any important German interest that the discovery would undermine. Courts have routinely required German nationals to sit for U.S.-style depositions. See, e.g., SEC v. Volkswagen Aktiengesellschaft, 2023 WL 1927244, at *2 (N.D. Cal. Feb. 10, 2023); M&C Corp. v. Erwin Behr GmbH & Co., KG, 165 F.R.D. 65 (E.D. Mich. 1996); Work v. Bier, 106 F.R.D. 45, 56-57 (D.D.C. 1985). At any rate, foreign laws "do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence," and there is no presumption that an American court must use the Hague procedures when ordering discovery from foreign nationals. Aerospatiale, 482 U.S. at 544 n.29. Gastauer's participation in this discovery, including any deposition, is required, but it will not automatically waive any jurisdictional defense he may wish to assert going forward. Fed. R. Civ. P. 37; Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 695, 706 (1982) (jurisdictional discovery order is subject to Rule 37 because the defendant is "submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction"). The court expects the parties to move expeditiously and cooperatively. If either party fails to do so, or if the parties are unable to resolve any discovery disputes despite their best efforts to do so, objections may be raised in a timely manner. And of course, Rule 37 sanctions for failing to cooperate are applicable, up to and including establishing as admitted jurisdictional facts. See Ins. Corp. of Ir., 456 U.S. at 706-707. Thus, the SEC's motion to exercise personal jurisdiction is DENIED WITHOUT PREJUDICE and its request to take jurisdictional discovery is ALLOWED. The SEC may propound five interrogatories and five document requests. If it wishes to depose Gastauer, it may do so for no more than seven hours. The SEC will propound any discovery requests and notice any deposition of Gastauer within one week of this order, by May 23, 2024. Gastauer will submit responses and objections to any discovery requests by June 24, 2024, and will compete any necessary document productions by July 1, 2024. The SEC will depose Gastauer by July 12, 2024. If the SEC wishes to renew its motion to exercise personal jurisdiction over Gastauer, it will do so by July 19, 2024, and Gastauer will file an opposition by August 2, 2024. Reply, if any, with leave of court (and any proposed reply must be attached to the SECs motion for leave to file a reply). The Clerk will schedule a hearing for shortly after briefing is complete. The court will not entertain extensions to this schedule absent extenuating circumstances. (RGS, law4) (Entered: 05/16/2024)

**Add.14**

This PDF was generated on April 02, 2025 by PacerPro for a text-only docket entry synced on March 11, 2025.

https://app.pacerpro.com/cases/8472168

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### United States District Court

### District of Massachusetts

#### Notice of Electronic Filing

The following transaction was entered on 8/6/2024 at 4:09 PM EDT and filed on 8/6/2024

| | |
|---|---|
| **Case Name:** | Securities and Exchange Commission v. Knox et al |
| **Case Number:** | 1:18-cv-12058-RGS |
| **Filer:** | |
| **WARNING: CASE CLOSED on 12/21/2022** | |
| **Document Number:** | 328(No document attached) |

**Docket Text:**
Judge Richard G. Stearns: ELECTRONIC ORDER entered granting [318] Motion for Sanctions. Since April of this year, Gastauer has effectively stopped litigating this case. After the First Circuit reversed this court's entry of a final judgment against Gastauer, the court invited the parties to submit supplemental briefing on the issue of whether Gastauer had sufficient minimum contacts with the forum for the court to exercise personal jurisdiction over him. The SEC moved to exercise personal jurisdiction, and Gastauer did not oppose. After the court permitted the SEC to take limited jurisdictional discovery, the SEC served on Gastauer document requests and interrogatories, and it noticed a deposition of Gastauer. Gastauer refused to produce any documents, answer the interrogatories, or sit for a deposition. The SEC then moved to compel Gastauer to respond to its discovery requests or, alternatively, for sanctions. Gastauer again did not oppose the SECs motion. Indeed, he terminated his U.S. counsel. The court convened a hearing on the SEC's motion today, August 6, 2024. Despite having notice of the hearing, Gastauer failed to appear.

The court concludes that at this point, sanctioning Gastauer is the only sensible path forward. Given the history of the case, ordering Gastauer to respond to the discovery requests and sit for a deposition would have little purpose; the court has ordered Gastauer to participate in jurisdictional discovery and attend a hearing, yet he did neither. In short, if "the sanction fits the misconduct, a trial court is not obligated to withhold the sanction." *See Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 38-39 (1st Cir. 2012).

As the court has previously noted, the SEC has made out a colorable case for personal jurisdiction. *See* Dkt. # 317. The court thus may properly sanction Gastauer by establishing as admitted facts that would support the exercise of personal jurisdiction over him. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705-706 (1982).

Accordingly, the SEC's motion for sanctions is ALLOWED. The court deems as admitted facts sufficient to establish specific personal jurisdiction over Gastauer. (RGS, law4)

**1:18-cv-12058-RGS Notice has been electronically mailed to:**

Mark A Berthiaume    berthiaumem@gtlaw.com, burtn@gtlaw.com, limak@gtlaw.com, mark--berthiaume-3949@ecf.pacerpro.com

Martin F Healey    healeym@sec.gov, #brodocket@sec.gov

Patrick J. Dolan    pdolan@cornelldolan.com

Kathleen Burdette Shields    shieldska@sec.gov, #BRODOCKET@SEC.GOV, allenjon@SEC.GOV

William D. Weinreb    billweinreb@quinnemanuel.com, anastaciacates@quinnemanuel.com

J. Lauchlan Wash    washj@sec.gov

John J. Butts    john.butts@wilmerhale.com, WHDocketing@wilmerhale.com

Andrew S. Dulberg    andrew.dulberg@wilmerhale.com, WHDocketing@wilmerhale.com

Timothy M. Cornell     tcornell@cornelldolan.com

David M. Scheffler     schefflerd@sec.gov, #brodocket@sec.gov

Amy Gwiazda     gwiazdaa@sec.gov

Nita Kumaraswami Klunder     klunderni@sec.gov

Jonathan R. Allen     allenjon@sec.gov, #brodocket@sec.gov

Eric S. Rosen     erosen@dynamisllp.com, erosen@ecf.courtdrive.com, erosen_525@ecf.courtdrive.com, mvigliarolo@dynamisllp.com, mvigliarolo@ecf.courtdrive.com

Maxwell B. Feit     mfeit@byrdcampbell.com

**1:18-cv-12058-RGS Notice will not be electronically mailed to:**

Evan Georgopoulos
Rubin & Rudman LLP
53 State Street, 15th Flr.
Boston, MA 02109

Michael T. Gastauer(Terminated)
Tverskaya St. 4
Moscow, RU 12500

Rebecca Israel
Securities and Exchange Commission
Boston Regional Office
33 Arch Street
23rd Floor
Boston, MA 02110

**Add.17**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12058-RGS

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff

v.

ROGER KNOX, WINTERCAP S.A., MICHAEL T. GASTAUER, WB21 US
INC., SILVERTON SA INC., WB21 NA INC., C CAPITAL CORP.,
WINTERCAP SA INC., and B2 CAP INC.,
Defendants

and

RAIMUND GASTAUER, SIMONE GASTAUER FOEHR, B21 LTD.,
SHAMAL INTERNATIONAL FZE, and WB21 DMCC,
Relief Defendants

MEMORANDUM AND ORDER ON PLAINTIFF'S RENEWED MOTION
FOR SUMMARY JUDGMENT

January 29, 2025

STEARNS, D.J.

Before the court is plaintiff United States Securities and Exchange
Commission's (the Commission or SEC) renewed motion for summary
judgment as to relief defendant Raimund Gastauer. For the following
reasons, the court will allow the motion.

**BACKGROUND**

The court assumes the reader's familiarity with the factual and procedural history of the case. However, by way of brief background, on October 7, 2022, the court issued a final judgment against Gastauer, finding him liable on the SEC's claim of unjust enrichment after his appropriation of proceeds of securities fraud committed by his son, Michael Gastauer. *See* Dkt. # 286 at 1. The court entered an order of disgorgement against Gastauer, requiring him to pay $3,315,305 plus prejudgment interest to the SEC. *See* Dkt. # 286 at 2. Gastauer appealed the court's determination that it could exercise personal jurisdiction over him and the proceeds of the fraud ancillary to its uncontested jurisdiction over his son, whom the court deemed as the real defendant-in-interest. *See* Dkt. # 287 at 1. On February 9, 2024, the First Circuit reversed the court's entry of final judgment against Gastauer, rejecting the court's theory of derivative jurisdiction and remanded the matter for further proceedings.[1]  *See SEC v. Gastauer*, 913 F.4th 1, 13 (1st Cir. 2024).

On remand, the court ordered the parties to submit supplemental briefing on the issue of whether Gastauer had sufficient minimum contacts

---

[1] As the Commission limited its argument on appeal to the imputation of jurisdictional contacts from the defendant-in-interest, Michael, to Gastauer, the First Circuit did not consider whether Gastauer satisfied the minimum contacts requirement, such as by engaging in financial transactions facilitated through U.S.-based institutions. *See id.* at 9 n.4.

with this forum for the court to exercise specific personal jurisdiction over him.  *See* Dkt. # 314.  The SEC then moved against Gastauer based on his personal contacts with the forum or, in the alternative, to take jurisdictional discovery.  *See* Dkt. # 315.  Gastauer did not oppose the motion.  Responding to the SEC's motion, the court ruled that the SEC had "ma[de] out a colorable case for jurisdiction" and "identifie[d] factual disputes that may show exercising jurisdiction over Gastauer is proper" – including discovery confirming the extent of Gastauer's involvement in financial transactions in the United States and his obtaining of funds from bank accounts in the United States.[2]  Dkt. # 317.  The court accordingly permitted the Commission to take limited jurisdictional discovery on the issue of Gastauer's involvement in U.S.-based financial transactions involving Michael, WB21 US Inc., and C Capital Corp.[3]  *See id.*

The Commission properly served on Gastauer document requests and interrogatories, and noticed a deposition of Gastauer.  *See* Shields Decl. (Dkt.

---

[2] The court, on the factual record at the time, denied the SEC's motion to exercise personal jurisdiction without prejudice.

[3] After applying the balancing test of *Société Nationale Industrielle Aérospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522 (1987), the court also allowed the Commission to rely on the Federal Rules of Civil Procedure instead of the Hague Evidence Convention and Hague Service Convention for jurisdictional discovery.  *See* Dkt. # 317.

**Add.20**

# 320) ¶ 2.  After Gastauer, again, refused to produce any documents, answer the interrogatories, or sit for a deposition, the Commission moved a second time for an order to compel Gastauer to respond to its discovery requests, or in the alternative, for sanctions under Federal Rules of Civil Procedure 37(b) and (d), specifically a finding that personal jurisdiction over Gastauer is conclusively established.  *See* Dkt. # 318 at 1.  Gastauer did not oppose the Commission's motion.  Instead, he terminated his U.S. counsel and relayed through his German counsel that "he does not admit to the US courts as a valid jurisdiction."  *See* Dkt. # 327; Ex. 4 at 1 (Dkt. # 320-4).

The court scheduled a hearing for August 6, 2024 via video conference for the SEC's motion and ordered that "Gastauer should be prepared to show cause why sanctions up to and including establishing as admitted jurisdictional facts should not issue."  Dkt. # 322, 324.  The court also stated that "[i]f Gastauer fails to appear at the hearing, the court will entertain a motion for default judgment," but underscored that Gastauer's appearance at the hearing would not waive any valid jurisdictional defense that he might wish to pursue.  Dkt. # 324.

Despite having notice of the hearing, Gastauer failed to appear.  Dkt. # 328.  The court granted the Commission's motion and deemed as admitted facts sufficient to establish specific personal jurisdiction over him.  *See id.*,

citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705-706 (1982); *Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 38-39 (1st Cir. 2012) (holding if "the sanction fits the misconduct, a trial court is not obligated to withhold the sanction.")

## LEGAL STANDARD

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DISCUSSION

The Commission now requests that the court reinstate its prior summary judgment ruling against Gastauer, consistent with its prior warning that it was prepared to impose sanctions for Gastauer's refusal to

cooperate with discovery. *See* Dkt. # 330 at 1. Gastauer, again, refused to respond.[4]

There has been no subsequent factual development that calls the court's prior findings into question.[5] Nor are due process concerns implicated by the court's reinstatement of its summary judgment ruling. *See Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 705 (holding that there is no due process violation when a district court imposes under Rule 37(b) an order subjecting a party to personal jurisdiction as a sanction for the party's failure to comply with a discovery order seeking to establish facts relating to the court's personal jurisdiction over it). After Gastauer failed to respond to the

---

[4] On October 28, 2024, the court reminded Gastauer, after his United States counsel withdrew, that he had until November 14, 2024 to oppose the Commission's Motion for Summary Judgment. *See* Dkt. # 333. The Commission emailed Gastauer's German-based counsel the court's reminder, to which Gastauer's counsel indicated that Gastauer would not be accepting any "Court documents . . . other than that received from Germany's central authority under the Hague Convention on Service." Klunder Decl. (Dkt. # 298) ¶¶ 3, 4.

[5] On June 3, 2022, the court found that Gastauer was liable for unjust enrichment for $500,000 in proceeds that he received on December 26, 2017 from Entity Defendant WB21 US Inc. Dkt. # 263 at 18. After sanctioning Gastauer – including granting the Commission's motion for summary judgment in full – for violating numerous discovery orders, the court on October 7, 2022 held that Gastauer was liable for unjust enrichment for two additional wire transfers, totaling $2,815,305, on February 27, 2018 from Entity Defendant C Capital Corp. that were used to purchase a condominium at 3 Dollar Bay Place, London.

SEC's jurisdictional discovery requests and failed to appear remotely at the court's August 6, 2024 hearing, which specifically noted that Gastauer "should be prepared to show cause why sanctions up to and including establishing as admitted jurisdictional facts should not issue," Dkt. # 324, the court sanctioned him under Rule 37(b), deeming as admitted facts sufficient to establish specific personal jurisdiction over him – Gastauer's litigation misconduct is directly related to the merits of the jurisdictional issue. *Cf. Fuld v. Palestine Liberation Org.*, 82 F.4th 74, 94 (2d Cir. 2023).

The court will therefore reinstate its prior finding of summary judgment and require Gastauer to pay to the Commission his ill-gotten gains, which total $3,315,305, plus $1,347,326 in prejudgment interest to account for the additional time that Gastauer has had use of his gains.[6] *See SEC v. Sargent*, 329 F.3d 34, 40 (1st Cir. 2003) (holding that "prejudgment interest, like the disgorgement remedy, is intended to deprive wrongdoers of profits they illegally obtained by violating the securities laws").

**ORDER**

---

[6] The prejudgment interest is calculated based on the IRS Underpayment Rate, using the date on which Gastauer received the relevant transfers as the starting date. *See* McCann Decl. (Dkt. # 332) ¶ 6.

For the foreground reasons, the Commission's motion is <u>GRANTED</u>. Gastauer is ordered to pay $4,662,631 to the Commission.  The Clerk will enter judgment accordingly.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

**Add.25**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ROGER KNOX, WINTERCAP SA,<br>MICHAEL T. GASTAUER, WB21 US<br>INC., SILVERTON SA INC., WB21 NA<br>INC., C CAPITAL CORP., WINTERCAP<br>SA INC. AND B2 CAP INC.<br><br>Defendants,<br>and<br><br>RAIMUND GASTAUER, SIMONE<br>GASTAUER FOEHR, B21 LTD., SHAMAL<br>INTERNATIONAL FZE, AND WB21 DMCC<br><br>Relief Defendants. | Case No. 1:18-cv-12058-RGS |

**FINAL JUDGMENT AS TO RELIEF
DEFENDANT RAIMUND GASTAUER**

The Securities and Exchange Commission ("Commission") having moved for summary

judgment on its claims that relief defendant Raimund Gastauer ("Relief Defendant") is liable in

unjust enrichment for having received proceeds of fraud, the Court now GRANTS the

Commission's motion, FINDS that Relief Defendant Raimund Gastauer is liable in unjust

enrichment for receiving proceeds of fraud, and further orders as follows:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Relief Defendant is

liable for disgorgement of $3,315,305, representing the net proceeds gained as a result of the

1

conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $1,347,326, for a total of $4,662,631. Relief Defendant shall satisfy this obligation by paying $4,662,631 to the Securities and Exchange Commission within 30 days after entry of this Final Judgment.

Relief Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Relief Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Raimund Gastauer as a relief defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Relief Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Relief Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Relief Defendant.

The Commission shall hold the funds (collectively, the "Fund") until further order of this Court. The SEC may propose a plan to distribute the Fund subject to the Court's approval, and the Court shall retain jurisdiction over the administration of any distribution of the Fund.

The Commission may enforce the Court's judgment for disgorgement and prejudgment

2

interest by using all collection procedures authorized by law, including, but not limited to, moving for civil contempt at any time after 30 days following entry of this Final Judgment. Relief Defendant shall pay post judgment interest on any amounts due after 30 days of entry of this Final Judgment pursuant to 28 U.S.C. §1961.

II.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

III.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: _Jun 29_, 2025

_Richard G Stearns_
UNITED STATES DISTRICT JUDGE

**15 U.S.C. § 77v(c)**

**§ 77v. Jurisdiction of offenses and suits**

\* \* \*

**(c) Extraterritorial jurisdiction**

The district courts of the United States and the United States courts of any Territory shall have jurisdiction of an action or proceeding brought or instituted by the Commission or the United States alleging a violation of section 77q(a) of this title involving--

**(1)** conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or

**(2)** conduct occurring outside the United States that has a foreseeable substantial effect within the United States.

**15 U.S.C. § 78u(d)(5)**

**§ 78u. Investigations and actions**

\* \* \*

**(d)  Injunction proceedings; authority of court to prohibit persons from serving as officers and directors; money penalties in civil actions**

\* \* \*

**(5) Equitable relief**

In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors.

\* \* \*

**15 U.S.C. § 78aa(b)**

**§ 78aa. Jurisdiction of offenses and suits**

\* \* \*

**(b) Extraterritorial jurisdiction**

The district courts of the United States and the United States courts of any Territory shall have jurisdiction of an action or proceeding brought or instituted by the Commission or the United States alleging a violation of the antifraud provisions of this chapter involving--

**(1)** conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or

**(2)** conduct occurring outside the United States that has a foreseeable substantial effect within the United States.